[Crim. No. 13273. First Dist., Div. One. Apr. 4, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
JERIMIAH BRIAN DONAHUE et al., Defendants and Respondents.

## COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and Don Jacobson, Deputy Attorneys General, for Plaintiff and Appellant.

Atkins & Jacobson, Burton C. Jacobson, Keane & Keane and Peter G. Keane for Defendants and Respondents.

## OPINION

**WEINBERGER, J.**\*—In an information filed by the Santa Clara County District Attorney, the respondents were charged in count I with violation of Penal Code section 182 (conspiracy to violate Pen. Code § 311.2 during the months of March 1971 through February 1973). As overt act one the information charged that in the County of San Francisco respondent Donahue produced a film entitled "First Time Around." Overt act two charged that in the County of Santa Clara respondents Sandlow and Corsi exhibited the film on or about February 21, 1973, to February 28, 1973. Count II of the information charged respondents with violation of Penal Code section 311.2 (preparation,

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

distribution, and exhibition of obscene matter). Respondents moved under Penal Code section 995 to set aside the information on the ground that the defendants had been committed by the magistrate without reasonable and probable cause.

The superior court granted the motion as to all respondents with respect to count I. Count II, the misdemeanor count, was ordered returned to the municipal court for further proceedings. This appeal is from the order setting aside the conspiracy count.

At the preliminary hearing it was established that in the summer of 1971 respondent Jerimiah Brian Donahue, also known as J. Brian, made the film "First Time Around" in San Francisco and Marin Counties. He paid one of the actors, who testified at the preliminary hearing, for permitting himself to be photographed while engaging in various homosexual activities with two or more adult males. This "actor" testified he assumed that Donahue was going to show the film at a San Francisco theater for profit.

On February 27, 1973, a police sergeant paid the admission price at the Paris Theater in San Jose and viewed the film which listed, among other credits at the beginning, "produced and written by J. Brian." The Paris Theater also advertised the film in the San Jose Mercury News and "J. Brian" was mentioned among the credits in this advertisement. On the following day the police sergeant returned to the theater which was still exhibiting the film and served a search warrant upon respondent Corsi who said she was the manager of the theater and was employed by a third party. The film was seized along with documentary evidence tending to connect Sandlow with the operation of the theater.

The evidence produced at the preliminary hearing disclosed (1) that Donahue made the film "First Time Around" in the summer of 1971; (2) that Sandlow was the president of Nuanu Incorporated which leased the Paris Theater in San Jose where the film was shown in February 1973; (3) that Sandlow signed the lease on behalf of Nuanu Incorporated, was connected with the operation and had probably been in the projection room of the Paris Theater shortly before the search warrant was executed; and (4) that Corsi was the manager of the theater at the time the film was being shown and was selling tickets when the search warrant was executed.

The sole issue presented herein is whether the respondents were held to answer without reasonable or probable cause.     ■     "Lack of reason-

able or probable cause is . . . a lack of any competent substantial evidence to show the commission of a crime or the defendant's connection with it. And reasonable or probable cause exists 'if there is sufficient proof to make it reasonable to believe that the defendant is guilty of the offense charged. . . . ■ On a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated.' (*People* v. *Jablon* (1957) 153 C.A.2d 456, 458, 314 P.2d 824 [citations].)" (Witkin, Cal. Criminal Procedure (1963) Proceedings Before Trial, § 226, p. 212.)

*People* v. *Aday* (1964) 226 Cal.App.2d 520, 533-534 [38 Cal.Rptr. 199] [cert. den., 379 U.S. 931 (13 L.Ed.2d 343, 85 S.Ct. 329)] states the law of conspiracy as follows: "A criminal conspiracy may be established by showing that there was an agreement between two or more persons to commit a crime and that an act was done in California to effect the object of the agreement. [Citations.] 'The essence of the crime of conspiracy is the "evil" or "corrupt" agreement to do an unlawful act. It is the evil intent that makes a combination criminally indictable.' [Citation.] Accordingly, conspiracy is a 'specific intent' crime requiring that the accused have the specific intent to do an unlawful act or to do a lawful act by unlawful means. [Citations.] Mere association does not establish a conspiracy, but there must be evidence of some participation or interest in the commission of the offense. [Citations.] [¶] It is not necessary that the overt act be criminal. [Citations.] It may be committed by one of the conspirators, and when so committed all members of the conspiracy are bound by such act. [Citations.] 'It is equally well settled that after a conspiracy to commit an unlawful act is established, every act of each member of the conspiracy in furtherance of their original plan is in contemplation of law the act of all of them.' [Citations.] It is not necessary that a defendant be shown to have been a member of a conspiracy from its inception, but one who joins a conspiracy after it is formed, and actively participates in it, thereby adopts the previous acts and declarations of his fellow conspirators. [Citations.] Nor is it necessary, moreover, that each conspirator see the others or know who all the members of the conspiracy are. [Citation.] [¶] The existence of the agreement may be shown by circumstantial as well as by direct evidence. [Citations.] In *Bompensiero* [*Bompensiero* v. *Superior Court* (1955) 44

Cal.2d 178, 184 (281 P.2d 250)] it is stated that 'The rule governing the sufficiency of the evidence to justify a suspicion of a conspiracy has been summarized as follows: "Direct proof of a formal understanding between parties to the conspiracy is not required as the basis of an indictment or information. '[I]t was not necessary for the State to prove that the parties actually came together, mutually discussed their common design, and after reaching a formal agreement set out upon their previously agreed course of conduct. The extent of the assent of minds which are involved in a conspiracy may be, and from the secrecy of the crime usually must be, inferred by the jury from the proofs of the facts and circumstances which, when taken together, apparently indicate that they are parts to the same complete whole.' " [Citation.]' "

The People's position that there is sufficient evidence in the present record to justify holding respondents to answer on the conspiracy count is summarized in the rhetorical question asked in their brief and the comment thereon, as follows: "If Donahue had produced the film for the purpose of exhibiting it for profit and thereafter Corsi and Sandlow were caught exhibiting that film for profit, how did they come by it? No third parties, middle men, intervening causes, or breaks in the chain are apparent. Accordingly, only one conclusion is permissible, if not inescapable: Corsi and Sandlow agreed to exhibit Donahue's film."

Indeed, the record discloses that Donahue produced the film, but that fact alone does not constitute any offense. It must have been produced with the specific intent to distribute or exhibit it. (*In re Klor* (1966) 64 Cal.2d 816, 819 [51 Cal.Rptr. 903, 415 P.2d 791].) Corsi's and Sandlow's possession of the film two years later with intent to exhibit it probably supplies the necessary circumstance to complete the offense proscribed by Penal Code section 311.2, but does not lead to the conclusion that Donahue, Corsi and Sandlow *agreed* and *conspired* to produce *and* exhibit the allegedly obscene film. As was said in *People* v. *Samuels* (1967) 250 Cal.App.2d 501, 509 [58 Cal.Rptr. 439] [cert. den., 390 U.S. 1024 (20 L.Ed.2d 281, 88 S.Ct. 1404)], "In the instant case, defendant was convicted of two counts of *conspiring* to violate section 311.2. It is axiomatic that if he could not be found guilty of the substantive offense without possessing intent to distribute the material in question, he could not be found guilty of conspiring to violate that section in the absence of evidence that he and one or more other persons entered into an agreement to prepare *and distribute* obscene material."

The People correctly assert that a reviewing court may not substitute its judgment as to the weight of the evidence for that of the magistrate

(*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197]), but that was not done in the case at bench. The magistrate failed to exercise his independent judgment, a practice we find deplorable. Defense counsel in arguing against a holding on the conspiracy count stated that an obscene magazine, for example, has to be prepared, printed, stapled and distributed eventually to a bookstore. According to the district attorney's theory every seller of such magazine becomes a party to an evil or corrupt agreement with all the other parties connected with the preparation and distribution of the offensive material. The magistrate answered: "Counsel, I'll tell you basically what I have come to in this matter. *I'm inclined to agree with you*, however, this is a very lowly Court down here and whatever this Court does is subject to refiling by the District Attorney and . . . I think probably this . . . from expediency of procedure should be argued and decided by the higher echelon of justice, the Superior Court. *I think for that purpose basically*, I'm going to find a holding on 182 of the Penal Code and trust that you able gentlemen will make your motions and argument up in the Superior Court." [Italics added.]

In answer to the suggestion of defense counsel that he would rather make the district attorney refile, the court stated: "I would rather not. I think this issue has to be . . . determined, number one, as to whether or not this is the type of section on which a 182 can be used to bootstrap into a felony. *I don't think it is.*" [Italics added.]

It is thus apparent that the reviewing court, rather than substitute its judgment for that of the magistrate, made the decision which the magistrate was inclined but reluctant to make. Further, the reviewing judge agreed with the magistrate that Penal Code section 182 was not intended to be used to bootstrap a misdemeanor into a felony.

As was said in the concurring opinion in *Krulewitch* v. *United States* (1949) 336 U.S. 440, 446-447 [93 L.Ed. 790, 796, 69 S.Ct. 716, 720], "The modern crime of conspiracy is so vague that it almost defies definition. Despite certain elementary and essential elements, it also, chameleon-like, takes on a special coloration from each of the many independent offenses on which it may be overlaid." ■ One thing is certain, however, a criminal conspiracy requires a specific intent to commit the unlawful act. "If, in a charge of conspiracy, the act involves a violation of positive law, the People must show the accused intended to violate it, or entered into the common purpose with knowledge that a violation of law

would result from the commission of the contemplated act. Proof of the mere commission of the act is not enough—there must be proof of a specific intent to violate the law, and the accused may prove that he had no such intention." (*People* v. *Bowman* (1958) 156 Cal.App.2d 784, 797 [320 P.2d 70].) "The requirement of specific intent applies to *all conspiracies.* ▮ 'Therefore, even though a conspiracy has as its object the commission of an offense which can be committed without any specific intent, there is no criminal conspiracy absent a specific intent to violate the law. That is, to uphold a conviction for conspiracy to violate a "public welfare offense" there must be a showing that the accused knew of the law and intended to violate it.' (*People* v. *Marsh*, supra [1962], 58 C.2d 743.)" (1 Witkin, Cal. Crimes (1963) Elements of Crime, § 108, p. 104.)

▮ While the cited cases deal with proof required at trial to prove a conspiracy, some evidence from which specific intent to violate the law can be inferred must also be presented at the preliminary hearing to support an information charging conspiracy. In the case at bench no such evidence appears in the transcript of the preliminary hearing. All the evidence negatives any suggestion that the parties *intentionally agreed* to violate Penal Code section 311.2. Donahue used the name by which he was commonly known to identify himself with the writing and production of the offending film and Sandlow and Corsi, on behalf of the Paris Theater, advertised in the local newspaper that they were exhibiting it. While the parties may well be found guilty of having violated Penal Code section 311.2, their conduct as revealed by the transcript is completely inconsistent with the implication of the People's charge that they conspired, combined, confederated and agreed together *intentionally* to do so. (See *People* v. *Bernhardt* (1963) 222 Cal.App.2d 567, 585 [35 Cal.Rptr. 401].)

The indiscriminate use of conspiracy prosecutions has been criticized frequently in decisions and in law reviews. In *Krulewitch* v. *United States, supra,* 336 U.S. 440, the concurring opinion states: "The unavailing protest of courts against the growing habit to indict for conspiracy in lieu of prosecuting for the substantive offense itself, or in addition thereto, suggests that loose practice as to this offense constitutes a serious threat to fairness in our administration of justice." (*Id.* at pp. 445-446 [93 L.Ed. at pp. 795-796].) "Of course, it is for prosecutors rather than courts to determine when to use a scatter-gun to bring down the defendant, but there are procedural advantages from using it which add

to the danger of unguarded extension of the concept." (*Id.* at p. 452 [93 L.Ed. at pp. 798-799]; *Castro* v. *Superior Court* (1970) 9 Cal.App.3d 675, 691 [88 Cal.Rptr. 500]; *Developments in the Law—Criminal Conspiracy* (1959) 72 Harv.L.Rev. 920, 922; O'Brian, *Loyalty Tests and Guilt by Association* (1948) 61 Harv.L.Rev. 592, 599; Johnson, *The Unnecessary Crime of Conspiracy* (1973) 61 Cal.L.Rev. 1137; 1 Witkin, Cal. Crimes (1963) Elements of Crime, § 106, p. 101.)

Finally, it seems apparent that Donahue's culpability, if any, is different from that of the defendants Sandlow and Corsi. Although all are charged with violating Penal Code section 311.2, their malefactions, if any, are essentially different. Donahue allegedly prepared, published or printed obscene matter with intent to distribute it. Sandlow and Corsi allegedly possessed and exhibited obscene matter. If Donahue violated the law his offense was completed long before Sandlow and Corsi became users of his illegal product. It is not the law that one who becomes a party to a conspiracy after the formation thereof becomes liable for every criminal act done before he joined. (*People* v. *Weiss* (1958) 50 Cal.2d 535, 564 [327 P.2d 527]; *People* v. *Feldman* (1959) 171 Cal.App.2d 15, 21 [339 P.2d 888].) Hence Sandlow and Corsi, absent some proof of agreement, did not become conspirators with Donahue to produce, direct and distribute the film in question.

We find it contrary to the basic concept of fairness in the administration of justice to haphazardly join as criminal conspirators motion picture producers and exhibitors, authors and booksellers, playwrights and theater managers. Penal Code section 311.2 makes it a misdemeanor for any of these to do any of the acts denounced by the statute and, absent any evidence that the parties agreed to act in concert to violate the statute, the scatter-gun approach mentioned in *Krulewitch* v. *United States, supra,* 336 U.S. 440, should be avoided.

■ " 'Although a conspiracy may be proved by circumstantial evidence, there must be some evidence from which the unlawful agreement can be inferred before criminal liability may be imposed on the basis of conspiracy.' (*Lavine* v. *Superior Court* (1965) 238 Cal.App.2d 540, 543 [48 Cal.Rptr. 8].) There must be substantial evidence to establish all the essential elements of the conspiracy. (*People* v. *Lynam* (1968) 261 Cal.App.2d 490 [68 Cal.Rptr. 202].) Mere association alone cannot furnish the basis for a conspiracy. (*Simmonds* v. *Superior Court* (1966)

245 Cal.App.2d 704, 708 [54 Cal.Rptr. 195].)" (*People* v. *Drolet* (1973) 30 Cal.App.3d 207, 218 [105 Cal.Rptr. 824].)

The trial court's order dismissing the conspiracy charge is affirmed.

Sims, Acting P. J., and Elkington, J., concurred.