[Civ. No. 47065. Second Dist., Div. Five. Aug. 17, 1976.]

LYNN LOUIS HUTCHINS, Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE SANTA MONICA JUDICIAL
DISTRICT OF LOS ANGELES COUNTY,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

## COUNSEL

Burt Pines, City Attorney, David Perez, Chief Assistant City Attorney, Madeleine I. Flier, Richard M. Helgeson and Gary M. Pohlson, Deputy City Attorneys, for Real Party in Interest and Appellant.

Herbert M. Rosenthal and Robert M. Sweet as Amici Curiae on behalf of Real Party in Interest and Appellant.

Donald C. Smaltz, Michael D. Scott and Thomas M. Indovina for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

## OPINION

ASHBY, J.—Respondent Lynn Louis Hutchins (hereinafter "respondent"), a licensed California attorney at law, was charged in a misdemeanor complaint with aiding and abetting and conspiring with certain persons acting as runners or cappers in the solicitation of business for him. Business and Professions Code section 6151 defines a runner or capper as "any person . . . acting in any manner or in any capacity as an

agent for an attorney at law . . . in the solicitation or procurement of business for such attorney at law . . . ." Business and Professions Code section 6152 makes it "unlawful for any person . . . to act as a runner or capper for any such attorneys or to solicit any business for any such attorneys . . . ." Business and Professions Code section 6153 makes such act a misdemeanor.

The amended misdemeanor complaint specifically charged in count I "[t]hat on or about 5:20 P.M., on November 8, 1973, and for a period of 48 hours thereafter, at and in the County of Los Angeles, and City of Los Angeles, State of California, a misdemeanor, to wit: Violation of Section 6152 of the California Business and Professions Code of the State of California was committed by LYNN LOUIS HUTCHINS who at the time and place last aforesaid did counsel and aid the commission of such misdemeanor in violation of Section 659 of the California Penal Code and did act as a principal as that term is defined in Penal Code Section 31 in that he did aid and abet, and advise and encourage a person to wit: William Stiger and John Doe aka 'Luce' in that person['s] individual capacity and [in] his capacity as a private and public employee and for a firm, corporation, partnership, and association to act as a runner and capper for an attorney, as tnat term is defined in Business and Professions Code Section 6151, and to solicit business for such attorney . . . ."

In count III of the amended complaint it was cnarged that respondent, "Luce" and Stiger violated Penal Code section 182 in that they did "conspire among themselves and with other persons . . . to commit a misdemeanor to wit: violation of Section 6152 of the Business and Professions Code of the State of California[, t]he intendment being that Stiger and Luce or either of them would act as cappers and solicit business." It is alleged that during the 48 hours following a traffic accident at 5:20 p.m. on November 8, 1973, Stiger and Luce drove the accident victims to various locations, told them that they would see a lawyer the next day and that respondent is a good lawyer, had them sign a form which pertained to legal services, and drove them to the law offices of respondent.

The superior court issued a peremptory writ of prohibition commanding the municipal court to desist and refrain from taking any further action or proceeding in the matter, adopting respondent's contention that although the runners or cappers involved in such conduct are subject to criminal prosecution, the attorney is not. The People appeal. The State

Bar appears as amicus in support of the People. We hold that respondent's contention is without merit and therefore we reverse.

DISCUSSION

"All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, . . . are principals in any crime so committed." (Pen. Code, § 31; see *People* v. *Durham,* 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198]; *People* v. *Villa,* 156 Cal.App.2d 128, 133-134 [318 P.2d 828].) ■ The aiding and abetting law can even be applied where by statutory definition the defendant would be *incapable* of committing the substantive offense by himself. (E.g., *Matter of Application of Kantrowitz,* 24 Cal.App. 203, 204-205 [140 P. 1078] (man may aid in the rape of his wife); *People* v. *Hernandez,* 18 Cal.App.3d 651, 657 [96 Cal.Rptr. 71] (woman may aid in the rape of another woman); *People* v. *Elliott,* 241 Cal.App.2d 659, 665 [50 Cal.Rptr. 757] (woman may aid male pimp); *People* v. *Wallin,* 32 Cal.2d 803, 806-809 [197 P.2d 734] (defendant may aid another to be accessory to defendant's own crime).)

■ Moreover, where two or more persons agree that they will commit an unlawful act or achieve a lawful object by unlawful means, and in furtherance of the agreement commit an overt act towards achievement of their object, they are guilty of conspiracy. (Pen. Code, § 182; see *People* v. *Morales,* 263 Cal.App.2d 368, 375 [69 Cal.Rptr. 402]; *People* v. *Fujita,* 43 Cal.App.3d 454, 471 [117 Cal.Rptr. 757].)

Respondent contends that notwithstanding these principles an attorney who employs runners and cappers to solicit business for him is not subject to criminal prosecution. Although the briefs of both parties and amicus are very thorough, none has been able to cite a controlling case involving the same factual situation, and each relies on various analogies. Respondent cites four California cases and one United States Supreme Court case to support his argument that the laws of aiding and abetting and conspiracy are not applicable to his alleged conduct in this case. In *Ex parte Sullivan,* 17 Cal.App. 278 [119 P. 526], an unmarried man was charged with living in a state of cohabitation and adultery with a married woman in violation of Penal Code section 269a. The court granted a writ of habeas corpus, noting that adultery is defined as the voluntary sexual intercourse of a married person with a person other than the offender's husband or wife, and that since the petitioner was not a married person

he was incapable of committing the offense. The court declined to uphold the prosecution on an aiding and abetting theory, suggesting that it would be contrary to legislative intent. The Supreme Court followed *Sullivan* in *In re Cooper,* 162 Cal. 81, 85 [121 P. 318], another adultery case, declining to apply Penal Code section 31, on the ground that Penal Code section 269a excluded the idea of any criminal offense on the part of the unmarried person on account of such participation alone.

In *Gebardi* v. *United States,* 287 U.S. 112 [77 L.Ed. 206, 53 S.Ct. 35, 84 A.L.R. 370], a man and a woman took a trip across state lines for the purpose of illicit sexual relations. The woman consented to the trip for such purpose. Both the man and the woman were convicted of conspiracy to violate the Mann Act. Referring to the language of the statute ("any person who shall knowingly transport . . . any woman or girl for . . . any . . . immoral purpose") the court found that the failure of the statute to provide any punishment for the woman evidenced a congressional intent that she should not be punished if her only role was her mere acquiescence in the transportation for the intended purpose, and the court therefore reversed the convictions, citing *In re Cooper.*

*People* v. *Buffum,* 40 Cal.2d 709 [256 P.2d 317], was a prosecution against a doctor and another man for conspiracy to perform abortions in violation of Penal Code section 274. On the issue of whether the women who obtained the abortions were accomplices so as to require corroboration of their testimony, the Supreme Court held that they were not, because they were not subject to prosecution for the same crime of which the defendant was convicted. A woman who obtained an abortion on herself was subject to prosecution for violation of a different statute, Penal Code section 275. The court held that the specific statute controlled the general, and that therefore the woman could not be prosecuted for violating Penal Code section 274 or for conspiracy to violate it. (*Id.,* at pp. 720-722.) The court indicated that the conspiracy statute did not apply "where the statutes defining the substantive offense disclose an affirmative legislative policy that the conduct of one of the parties involved shall be unpunished. [Citing *Gebardi*; citations omitted.] Similarly, the rule should not be applied where, as here, the Legislature singles out one of the parties for special treatment by enacting a statute which deals only with the conduct of that person and provides for a lesser punishment than is given to the other party." (*Id.,* at pp. 722-723.) Finally, the *Buffum* rationale was recently applied in *Williams* v. *Superior Court,* 30 Cal.App.3d 8 [106 Cal.Rptr. 89], to prevent the elevation of a simple misdemeanor act of prostitution into a felony by charging the prostitute with conspiracy with her pimp.

■ From these cases respondent attempts to distill a "rule" that "where a statute defines an offense which necessarily involves joint action, but provides no punishment for the conduct of one of the participants, that participant cannot be charged as principal, co-conspirator or aider and abettor in the substantive offense committed by the other party." Respondent argues that since Business and Professions Code section 6152 refers specifically only to the runners or cappers, therefore the attorney who employs them was not intended to be subject to criminal prosecution. We find no merit to this contention.

First, there is certainly no persuasive analogy between the facts of the instant case and the facts of the cases relied upon by respondent. Each of those cases dealt with sexual matters, and the party whom the court exempted from punishment was generally considered by society to be less blameworthy morally than the other party. The situation of an attorney who employs runners or cappers to solicit business for him is entirely different. The attorney is likely to be the instigator or manager of the scheme and is the person who profits financially from it. In terms of the cases cited, the position of the attorney in such situations is more closely analogous to the pimp than the prostitute or to the abortionist than the patient.

Second, the cases do not establish the "rule" claimed by respondent to be applicable here. The cited cases fall into two categories: (1) where the court found "an affirmative legislative intent" that one party was to be unpunished (*Sullivan, Cooper, Gebardi*); and (2) where the court found a different criminal statute imposing a lesser punishment to be controlling (*Buffum, Williams*). The instant case clearly does not fall within the latter category, since respondent cites no controlling criminal statute specifically covering the attorney's conduct. The fact that the attorney is subject to discipline by the State Bar for violation of former Rules of Professional Conduct, rules 2 and 3,[1] is beside the point. ■ State Bar disciplinary proceedings are not criminal; their purpose is not punishment of the attorney but protection of the public, the courts, and the legal profession.

---

[1]Former Rules of Professional Conduct, rules 2 and 3 provided in part as follows: "Rule 2. Section a. A member of the State Bar shall not solicit professional employment by advertisement or otherwise. . . . Rule 3. A member of the State Bar shall not employ another to solicit or obtain, or remunerate another for soliciting or obtaining, professional employment for him; . . . ." (3B West's Ann. Bus. & Prof. Code (1974 ed.) foll. § 6076 at pp. 374-375 [Deering's, Rules Prof. Conduct, rules 2 and 3].) The Rules of Professional Conduct were revised and renumbered effective January 1, 1975. (See generally rules 2-101 et seq., 3-101 [Deering's Cal. Codes Ann., Rules (1976 ed.) p. 584 et seq.]. 3B West's Ann. Bus. & Prof. Code (1977 pocket supp.) foll. § 6076 at p. 52 et seq.)

*(Tomlinson* v. *State Bar,* 13 Cal.3d 567, 575-576 [119 Cal.Rptr. 335, 531 P.2d 1119]; *Best* v. *State Bar,* 57 Cal.2d 633, 637 [21 Cal.Rptr. 589, 371 P.2d 325]; *Marsh* v. *State Bar,* 2 Cal.2d 75, 79 [39 P.2d 403].)

Thus, in order to sustain respondent's position, we would have to find an "affirmative legislative intent" that the attorney involved in a violation of Business and Professions Code section 6152 by runners and cappers acting on his behalf is to go unpunished. Contrary to respondent's contention, the mere fact that the statute does not explicitly provide for punishment of the attorney does not itself necessarily show an affirmative legislative intent that the attorney is to go unpunished. In *May* v. *United States* (D.C.Cir. 1949) 175 F.2d 994 [84 App.D.C. 233], a statute prohibiting a member of Congress from receiving or agreeing to receive any compensation for services rendered to persons having business with the government was involved. The United States prosecuted not only the Congressman, but also the persons who paid the compensation, under the general aiding and abetting statute. The defendants made the same argument which respondent makes in this case: That since the receiving of the compensation necessarily required the paying of the compensation, but the statute prohibited only the receipt, therefore the payors could not be prosecuted. The court rejected this argument, stating: ". . . But the deduction that by its failure to make payment of compensation to a Congressman a crime by direct enactment to that effect, Congress evidenced an intent to exempt such payor from criminal liability, is not a necessary one. It is just as reasonable to assume that Congress, being fully aware of the general law on aiding and abetting, knew that when it made receipt of compensation a criminal offense, it thereby made the payor guilty, because the payor certainly aids and abets the receipt." *(Id.,* at p. 1004.) The court found no persuasive analogy in *Gebardi* and *Cooper.*

Thus the *Gebardi* case merely provides one aid in determining legislative intent. *(United States* v. *Falletta* (5th Cir. 1975) 523 F.2d 1198, 1200.) In order to invalidate the prosecution, the court must be persuaded from all of the circumstances that there was an *affirmative* legislative intent to create an exception to the general rule of liability of aiders and abettors and conspirators. *(May* v. *United States, supra.)*

The legislative history of Business and Professions Code sections 6151 through 6154 goes back 45 years to the enactment of chapter 1043 of the Statutes of 1931.[2] They were codified as article 9 of chapter 4 of the Business and Professions Code in 1939; a minor amendment not relevant here was made to sections 6151 and 6152 in 1963.[3]

The 1931 legislation was a reaction to scandalous conditions which became notorious in the late 1920's arising out of "ambulance chasing" activities of lawyers, insurance adjusters, and claim agents. In 1929 and 1930, the State Bar created a committee on ambulance chasing and set up local administrative committees in various cities to undertake a complete investigation of such cases and to recommend discipline of attorneys under the State Bar Act for violation of the then recently adopted rules 2 and 3 of the Rules of Professional Conduct.[4]

The local administrative committees investigated and made disciplinary recommendations in numerous cases. Meanwhile, the legislation which became chapter 1043 in the 1931 Legislature, Assembly Bill No. 319, was supported by the State Bar's committee on ambulance chasing.[5] Upon its passage, the State Bar committee on ambulance chasing and the president of the State Bar expressed satisfaction that it would go far in helping to eliminate the problem of solicitation of business by members of the bar.[6]

---

[2] As enacted in 1931, the pertinent provisions of the statute were:

"Sec. 3. It shall be unlawful for any person to act as a runner or capper or to solicit any business for attorneys . . . .

"Sec. 5. A runner or capper is hereby defined as any person . . . acting in any manner or in any capacity as an agent for an attorney at law within this state in the solicitation or procurement of business for such attorney at law as provided in this act. An agent as hereby defined, is one who represents another in dealings with third person or persons.

"Sec. 6. Any person . . . .violating any of the provisions of this act shall be guilty of a misdemeanor, and shall be punishable by a fine not less than one hundred dollars nor more than five hundred dollars, or by imprisonment for not less than one month nor more than six months, or by both such fine and imprisonment. . . . Any contract for professional services secured by any attorney at law in this state through the services of a runner or capper shall be void."

[3] Statutes 1939, chapter 34, section 1, page 361; Statutes 1963, chapter 206, sections 1, 2, page 945.

[4] 4 State Bar J. 160-161 (1930); 4 State Bar J., Pt. 2, 28 (1929); 5 State Bar J. 358 (1930); 5 State Bar J., Pt. 2, 33 (1930).

[5] 6 State Bar J., Pt. 2, 33, 34 (1931).

[6] 6 State Bar J. 166-167 (1931); 6 State Bar J., Pt. 2, 34 (1931).

Subsequent to the legislation, the local administrative committee in Los Angeles remained active, and cooperated with local prosecuting authorities in investigation of more ambulance chasing activities in the mid-1930's.[7]

Recently attention was again drawn to this problem by a series of articles in the *Los Angeles Times* in March 1974, alleging an ambulance chasing ring was operating at the Los Angeles County Medical Center. The State Bar has been involved in investigation of that problem.[8] According to the amicus brief submitted by the State Bar in this case, the Los Angeles County District Attorney and the Los Angeles City Attorney, at the suggestion and with the active cooperation of the State Bar, are now actively prosecuting attorneys involved in running and capping operations.

Although respondent advances several arguments to support his contention that the legislative history shows an intent to leave the attorneys unpunished and to rely exclusively on State Bar discipline to deter attorneys from such conduct, we find none of them persuasive.[9] Respondent first argues that the 1931 Legislature had before it another bill on the same subject which more explicitly covered attorneys, Assembly Bill No. 466 (Assemblyman Cronin). This does not show, however, that attorneys were intended to be exempted from criminal prosecution under the bill which did pass, Assembly Bill No. 319 (Assemblyman Cobb). The initial criticism by the bar of Assembly Bill No. 466 was not that it covered attorneys but that it actually appeared to exempt attorneys.[10] The State Bar Journal disapproved it and stated that .its enactment would be certain to create confusion and evil conditions. It

---

[7]Biby, *Ambulance Chasers* (1935) 10 State Bar J. 42; Biby, *Chasing Ambulance Chasers* (1936) 11 State Bar J. 97.

[8]State Bar Reports (Apr. 1974) page 1; State Bar Reports (Oct. 1974) page 1.

[9]Rule 1 of the Rules of Professional Conduct provided:
". . . Nothing in these rules is intended to limit or supersede any provision of law relating to the duties and obligations of attorneys or the consequences of a violation thereof. . . ." (West's Ann. Bus. & Prof. Code, foll. § 6076 [Deering's, Rules of Professional Conduct, rule 1].)

[10]As originally introduced, Assembly Bill No. 466 read:
"Section 1. No attorney at law shall, through any runner, agent or person *not an attorney at law,* who is employed by him, solicit a person to employ such attorney to present a claim for damages for personal injuries or for death, or to prosecute an action to enforce such a claim, and no attorney at law shall directly or indirectly give or promise to pay any such person *other than an attorney at law* any money, fee or commission in consideration of the employment of such attorney by a person having a claim for personal injuries or for death, or soliciting or procuring such person who has such claim

contrasted Assembly Bill No. 466 with Assembly Bill No. 319, which it described as: "A measure aimed directly at ambulance chasing. . . ." (6 State Bar J. 69 (1931).) Assembly Bill No. 466 was then amended to read as indicated in the footnote.[11]

*Both* Assembly Bill No. 319 and Assembly Bill No. 466 were passed by the Legislature and sent to the Governor. The Governor signed Assembly Bill No. 319 and pocket vetoed Assembly Bill No. 466.[12]

Nothing in this legislative history indicates to us that the Legislature intended to exempt attorneys from criminal punishment for their aiding and abetting and conspiring in running and capping schemes, as contended by respondent. It does indicate that the Legislature sent to the Governor two overlapping bills covering the same subject matter, and that the Governor signed one but let the other die. Although respondent would attempt to categorize Assembly Bill No. 466 as dealing with attorneys and Assembly Bill No. 319 as dealing with runners and cappers, no such strict dichotomy is required by the language of the bills. The legislative body including the Governor in his legislative capacity could well have thought that the existing law of aiding and abetting or

---

to employ such attorney to present such claim or to prosecute an action for the enforcement thereof.

"Section 2. It shall be unlawful for any person *not an attorney at law* to solicit for money, fee or commission, in any manner whatsoever, any demand or claim for personal injuries or for death for the purpose of having an action brought thereon or for the purpose of settling the same. Nothing in this act shall be construed to prevent any bona fide labor organization or any member thereof from advising or securing advice from any member of such organization in regard to his rights.

"Section 3. (a) Any attorney at law who shall violate Sec. 1 hereof shall be guilty of a misdemeanor and shall be punished by a fine of not less than fifty dollars, nor more than a hundred dollars, or by imprisonment in the county jail not to exceed ninety days." (Italics added.)

[11] As amended May 7, 1931, Assembly Bill No. 466 read:

"Section 1. No attorney at law shall, through *any runner, agent or person* who is employed by him, solicit any person to employ such attorney to transact any kind of law practice and no attorney at law shall directly, or indirectly, give or promise to pay any such runner, agent or person any money, fee, commission or hire for such services.

"Section 2. It shall be unlawful for *any person* to solicit for money, fee, commission or hire, in any manner whatsoever, any kind of law practice for himself or any other person. Nothing in this act shall be construed to prevent any bona fide labor organization, or any member thereof from advising or securing advice from any member of such organization in regard to his rights.

"Section 3. Any person violating Section 1 and 2 hereof shall be guilty of a misdemeanor, punishable by a fine of not less than fifty dollars, or not more than five hundred dollars, or by imprisonment in the county jail not to exceed ninety days." (Italics added.)

[12] Assembly Journal (1931 Reg. Sess.) pages 3901-3902, 3905-3906; Assembly Final History (1931 Reg. Sess.) pages 187, 223.

conspiracy easily brought the attorney within the scope of Assembly Bill No. 319. (*May* v. *United States, supra,* 175 F.2d 994, 1004.) There are any number of valid legislative reasons the Governor might have preferred Assembly Bill No. 319 to Assembly Bill No. 466 other than an intent to exempt attorneys from criminal punishment.

That Assemblyman Cronin introduced his bill again in the 1933 Legislature without success[13] is not persuasive since the Legislature could have thought that the additional measure was unnecessary. ■ Similarly, respondent's argument that the unsuccessful introduction of Assembly Bill No. 182 in the 1975-1976 Legislature constitutes an "acknowledgment" by the "Legislature" that an attorney cannot be charged under the present law, is wholly without merit. That bill would have added a subdivision (b) to section 6152, making it unlawful for "[a]ny person to solicit another person to commit or join in the commission of a violation of" section 6152. By its terms the proposed amendment would have made it a crime to solicit a person to commit the crime specified in section 6152. Appellant properly points out that the crime of soliciting another person to commit a crime is quite distinct from aiding and abetting or conspiracy. As stated by Witkin:

"(2) *Successful Solicitation as Completed Crime.* The solicitation itself is a distinct offense, and is punishable irrespective of the reaction of the person solicited; i.e., the solicitor is guilty even though that person immediately rejects the request or proposal. (See *People* v. *Burt* (1955) 45 C.2d 311, 314, 288 P.2d 503.) But if the solicitation is successful and the crime is actually committed by the person solicited, the solicitor is also guilty of the completed offense. (P.C. 31 [those who 'have advised and encouraged' commission of crime are principals]; see *People* v. *Harper* (1945) 25 C.2d 862, 877, 156 P.2d 249.)

"(3) *Distinguished From Conspiracy.* The solicitation is punishable regardless of whether the person solicited acts or agrees to act; i.e., neither an agreement nor an overt act, necessary for a conspiracy conviction, need be shown in a prosecution for solicitation. (See *People* v. *Burt, supra; People* v. *Rissman* (1957) 154 C.A.2d 265, 275, 316 P.2d 60; *People* v. *Shapiro* (1959) 170 C.A.2d 468, 478, 338 P.2d 963.)" (1 Witkin, Cal. Crimes (1963) Elements of Crime, § 76, pp. 77-78.)

Thus, although the proposed amendment might well have made it easier as a practical matter to obtain a conviction of an attorney, by

---

[13]Assembly Journal (1933 Reg. Sess.) pages 481, 2695; Senate Journal (1933 Reg. Sess.) page 3504.

permitting conviction for his merely soliciting a runner to work for him, without having to prove aiding and abetting or conspiracy, it in no way implies that conviction for aiding and abetting or conspiracy is not possible under the existing law.[14]

Respondent also seeks to draw comfort from the fact that the provisions in question are contained in chapter 4 of the Business and Professions Code, relating to attorneys. The conclusion respondent draws from this is that the Legislature must have intended that State Bar disciplinary proceedings be the sole remedy for attorney involvement in these types of operations. We find no particular significance to the placement of these sections in that part of the code.[15] As pointed out before, the enforcement of the Rules of Professional Conduct is not intended to supersede any other laws that may be applicable to the attorney.

We therefore conclude there is no merit to respondent's contention that there exists an affirmative legislative intent that an attorney who joins with runners and cappers acting on his behalf in violation of Business and Professions Code section 6152 is to be exempt from criminal punishment.

■ In the trial court respondent contended that even if he could be held criminally liable on a theory of aiding and abetting, he could not also be charged with conspiracy, because of "Wharton's Rule." That rule states: "An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." (1 Wharton's Criminal Law and Procedure (1957) § 89, p. 191; fn. omitted. See *People* v. *Keyes,* 103 Cal.App. 624, 646 [284 P. 1096]. But see

---

[14]Respondent attempts to rely on press releases and news reports which he claims show that the author of Assembly Bill No. 182 and the district attorney stated that its purpose was to close a loophole which had prevented punishment of attorneys. Amicus points to certain other statements in the press reports indicating that present law permits prosecution of an attorney. These reports are hearsay and in any event the court may not rely on them. The opinion of an individual legislator as to the purpose of any law is not considered to prove the Legislature's intent. The court must determine legislative intent from the language of the provision and other permissible rules of construction or extrinsic aids.(*In re Lavine,* 2 Cal.2d 324, 327 [41 P.2d 161, 42 P.2d 311]; *Friends of Mammoth* v. *Board of Supervisors,* 8 Cal.3d 247, 258 [104 Cal.Rptr. 761, 502 P.2d 1049].) The task of interpreting the existing law as it applies to this case is solely a judicial one.

[15]Business and Professions Code section 6150 provides: "This article is a part of Chapter 4 of this division of the Business and Professions Code, but the phrase 'this chapter' as used in Chapter 4 does not apply to the provisions of this article unless expressly made applicable."

*Calhoun* v. *Superior Court,* 46 Cal.2d 18, 29-30 [291 P.2d 474]; *People* v. *Lewis,* 214 Cal.App.2d 799, 801 [29 Cal.Rptr. 825].) Respondent argues that section 6152 cannot be violated without an agreement between the attorney and capper, who is defined in section 6151 as an agent for the attorney, and that therefore Wharton's Rule prevents a conspiracy prosecution. This contention is without merit for at least two reasons.

First, respondent's initial premise is wrong. In *People* v. *Levy,* 8 Cal.App.2d Supp. 763, 769-770 [50 P.2d 509], construing the predecessor statute, section 3 of chapter 1043, Statutes of 1931, the court pointed out that the act provided "[i]t shall be unlawful for any person to act as a runner or capper *or to solicit any business for attorneys . . . .*" (Italics added.) The court held that an agency relationship was not essential to violation of the emphasized portion of the statute. The present wording of section 6152 is similar.[16]

Second, respondent misinterprets Wharton's Rule. ". . . The classic Wharton's Rule offenses—adultery, incest, bigamy, duelling—are crimes that are characterized by the general congruence of the agreement and the completed substantive offense. The parties to the agreement are the only persons who participate in commission of the substantive offense, and the immediate consequences of the crime rest on the parties themselves rather than on society at large." (*Iannelli* v. *United States,* 420 U.S. 770, 782-783 [43 L.Ed.2d 616, 625-626, 95 S.Ct. 1284]; fn. omitted.)

The instant case does not involve a classic two-party crime such as offering and agreeing to receive a bribe, which is complete upon the agreement and involves only the parties to the agreement. Here the substantive offense is not completed until an approach is made to a victim, the potential client. Completion of the substantive offense necessarily involves a third person, and Wharton's Rule is inapplicable.

The judgment is reversed.

Kaus, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied September 8, 1976, and the petition of the plaintiff and respondent for a hearing by the Supreme Court was denied October 14, 1976.

---

[16]"It is unlawful for any person . . . to act as a runner or capper for any such attorneys or to solicit any business for any such attorneys . . . ."