[Crim. No. 20187. First Dist., Div. One. Mar. 27, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
LEAH PANGELINA et al., Defendants and Appellants.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Peter R. Silten, Richard S. Kessler, Deputy State Public Defenders, and Daniel R. Marlow for Defendants and Appellants

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Thomas A. Brady and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

NEWSOM, J.—The present appeal arises under the following circumstances.

An indictment returned by the Santa Clara Grand Jury on August 30, 1978, charged appellants and four named codefendants with conspiracy (Pen. Code, § 182) to keep a house of prostitution (Pen. Code, § 315). On September 13, 1978, appellants were arraigned, entered a plea of not guilty, and waived time; they did not, however, join with their codefendants in expressly reserving the right to demur.

On October 16, 1978, codefendant Gloria Washington made various pretrial motions, including motions for a postindictment preliminary

hearing and to suppress, in which she was subsequently joined by appellants. On January 22, 1979, defendants' motions to set aside the plea and for a postindictment preliminary hearing were argued and submitted.[1] The court denied the motions, reserving defendants' rights to withdraw the pleas for the purpose of demurring.

A subsequent hearing on the same motions was held on February 2, 1979. The motion to suppress was continued at defense counsel's request. In a memorandum decision filed February 8, 1979, the motion for a postindictment preliminary hearing and to withdraw pleas was granted as to all defendants except appellants, who had failed to "reserve a demurrer" at the time of entering their plea.

Following this ruling, on March 7 and 13, 1979, appellants Leah Pangelina and Debra Ann Frazier, respectively, withdrew their previously entered time-waivers and demanded a trial within the statutory time. A trial was set and on March 20, 1979, various pretrial motions (none of which involved suppression of evidence), were unsuccessfully made and jury selection commenced. Subsequently appellants informed the court of a request for a ruling on a motion to suppress, and the court "reserved jurisdiction" to rule. On the following day, March 21, 1979, while jury selection was still in progress, the court ruled that appellants had waived their right to a suppression motion by failing to pursue it prior to trial. The jury was sworn on March 27, 1979; on that same date appellants renewed the motion to suppress, which was denied on the ground that appellants had failed to show newly discovered evidence as required by Penal Code section 1538.5, subdivision (h).

Appellants next moved for a mistrial on March 28, 1979, and again on March 29, 1979; both motions were denied. On April 5, 1979, the jury found appellants guilty of conspiracy.

A probation hearing was held on August 21, 1979. Appellants were both granted three years probation: Frazier's on the condition that she serve six months in county jail, and Pangelina's on the condition that she serve nine months in the county jail.

---

[1] In fact, defendants were attempting to withdraw their pleas based upon their reserved right to demur so that they might benefit from *Hawkins v. Superior Court* (1978) 22 Cal.3d 584 [150 Cal.Rptr. 435, 586 P.2d 916], which was issued on November 9, 1978, and made prospectively applicable to appellants who had not yet entered pleas.

The essentially undisputed factual background reveals the following.

The prosecution resulted from an investigation, by the vice unit of the San Jose Police Department, of suspected prostitution at 345 East Williams Street in San Jose—the investigation having followed a telephone call from Max Luy, manager of the building in which the illegal activities were allegedly occurring.

During the ensuing months, police officers kept the building under surveillance. Little of significance was observed except that several women, including appellants, were seen leaving the premises with men.

Suspicious nevertheless, on April 26, 1978, Officer Ruibola placed a call to a telephone number listed in a "Berkeley Barb" advertisement which he believed to be connected with prostitution. Ruibola was directed to a pay phone in the vicinity of 345 East Williams Street (hereinafter the building) and then to a fast-food restaurant to await a pickup car which never arrived.

On June 2, 1978, Officer Raymond Ireland responded to another "Berkeley Barb" advertisement which read: "Looking for variety? Well, we have it and would like to entertain businessmen. Call Joy, 408-998-0706." He was directed to a phone booth in the vicinity of the building where he spoke with a woman whose voice was identified as that of codefendant Pamela McConnell. Ireland was told to go to apartment No. 305 (hereinafter referred to as the apartment) in the building.

Upon arriving, Ireland was met by codefendant Leah Pangelina and invited inside.[2] Codefendant Gloria Washington, who appeared to be in charge, asked if he was a police officer and "frisked" him.

Ireland expressed a desire to "get laid" and chose codefendant McConnell. The two retired to a bedroom and agreed upon a price of $45, whereupon Ms. McConnell left the room and Ireland signaled to officers waiting outside. Officers Christie, Ruibola and Brown entered the apartment by kicking in the door.[3] Once inside, they took photographs of persons in various stages of undress, questioned the persons

---

[2] All of Officer Ireland's activities and conversations were being monitored by way of radio transmitting and recording devices.

[3] Noncompliance with knock/notice requirements was a ground for suppression alleged by codefendants and accepted by the trial court, which suppressed evidence seized from inside the apartment at the separate trial of appellants' codefendants.

on the premises, and subsequently conducted a search. Items seized from the apartment during this search included a card-file with names and addresses of different men, condoms, and a receipt from the "Berkeley Barb" in Gloria Washington's name.

Also seized from a black satchel was a letterhead referring to two businesses: "Washington Enterprises" ("Ralph H." president), located in Berkeley; and "Funky Denims," located in Albany. In Gloria Washington's purse was found a county welfare envelope which contained an A.F.D.C. report listing "Funking Denims" as a source of income. A telephone listed in the name of "Freddie Washington doing business as Funky Denims No. 2, 320 Broadway Street in Oakland, California" had been used to call the apartment over 400 times between April 17, and June 2, 1979. Telephone records also revealed numerous calls made between (1) "Funky Denims" and a public telephone booth in downtown San Jose, and (2) the apartment and a phone listed to Ralph Washington. The identity and role, if any, of Ralph Washington, were never clarified.

Testimony was offered from the vice squad officers concerning prior observations of the defendants approaching men on San Jose streets, and in automobiles registered to Gloria Turner (an alias used by Gloria Washington), Ralph Washington and "Washington Enterprises." Max Luy testified that the apartment was rented to a "Gloria Turner." Additionally, various men, including those in the apartment at the time of the "raid," testified concerning sexual services which they had received from the defendants at the apartment.

On these and related facts, appellants were charged and convicted of conspiracy (Pen. Code, § 182) to keep a house of prostitution, a felony.

The substantive crime of keeping a house of prostitution is merely a misdemeanor. Penal Code section 315 in pertinent part provides: "Every person who keeps a house of ill-fame in this state, resorted to for the purposes of prostitution or lewdness, or who wilfully resides in such house, is guilty of a *misdemeanor*; . . ." (Italics added.) ▉ Appellants' first contention is that a conspiracy charge, making felonious conduct which was intended to be punished only as a misdemeanor, is improper.

▉ Appellants concede, as they must, that it is generally proper to charge conspiracy even if in so doing the punishment invoked is more

severe than that provided for the criminal conduct which is the objective of the conspiracy. (*People* v. *Koch* (1970) 4 Cal.App.3d 270, 276 [84 Cal.Rptr. 629].) Such a rule is based upon the notion that a conspiracy increases the likelihood that the criminal object will be successfully attained, and makes more likely the commission of crimes unrelated to the original purpose for which the combination was formed. (*Callanan* v. *United States* (1961) 364 U.S. 587, 593-594 [5 L.Ed.2d 312, 317, 81 S.Ct. 321].) "Thus wrongful conduct by such combination should be criminally punished *even when the same acts would be excused or receive a lesser punishment when performed by an individual*; group criminal conduct calls for enhanced punishment, and society has a justifiable right and obligation to intervene at an earlier stage." (*People* v. *Williams* (1980) 101 Cal.App.3d 711, 721 [161 Cal.Rptr. 830], italics added.)

This general rule, however, is subject to an exception in the case law which precludes the use of a conspiracy charge to elevate criminal conduct to felony status where there appears an "affirmative legislative intent" to impose a lesser punishment or no punishment at all. (*Hutchins* v. *Municipal Court* (1976) 61 Cal.App.3d 77, 83 [132 Cal.Rptr. 158].)

Thus, in *Gebardi* v. *United States* (1932) 287 U.S. 112, 123 [77 L.Ed. 206, 211, 53 S.Ct. 35, 84 A.L.R. 370], the United States Supreme Court ruled that a woman could not be convicted of conspiracy to violate the Mann Act, based upon the language of a statute directed at "any person who shall knowingly transport . . . any woman or girl for . . . any . . . immoral purpose." The court perceived in the failure of the Mann Act explicitly to condemn the woman's participation beyond her mere consent to being moved, evidence of an affirmative legislative policy to leave her acquiesence unpunished. Similarly, in *In re Cooper* (1912) 162 Cal. 81, 85 [121 P. 318], cited with approval in *Gebardi*, it was held that the legislative intent to punish only married persons for adultery (Pen. Code, § 269a) prohibited an unmarried person from being a conspirator or abettor in that offense. (See also *People* v. *De Paula* (1954) 43 Cal.2d 643, 647 [276 P.2d 600].)

In *People* v. *Buffum* (1953) 40 Cal.2d 709 [256 P.2d 317], the question presented was whether women who had obtained abortions were accomplices or coconspirators of a doctor and another man charged with conspiracy to perform them (Pen. Code, § 274), thereby requiring corroboration of their testimony. Our high court held that the Legisla-

ture, by providing a less severe punishment for a woman who voluntarily submits to an abortion (Pen. Code, § 275), expressed an intent that such persons should not be punished for conspiracy to violate section 275. The court recognized that a defendant "may be liable to prosecution for conspiracy to commit a given crime even though he is incapable of committing the crime itself." (*Id.*, at p. 722.) But in finding that a conspiracy conviction was inconsistent with the legislative intent, the court declared: "This rule . . . does not apply where the statutes defining the substantive offense disclose an affirmative legislative policy that the conduct of one of the parties involved shall be unpunished. (*Gebardi* v. *United States*, 287 U.S. 112, 121-123 . . .; *In re Vince*, 2 N.J. 443 . . .; see *Pinkerton* v. *United States*, 328 U.S. 640, 643 . . .; *State* v. *McLaughlin*, 132 Conn. 325 . . . .) Similarly, the rule should not be applied where, as here, the Legislature singles out one of the parties for special treatment by enacting a statute which deals only with the conduct of that person and provides for a lesser punishment than is given to the other party." (*Id.*, at pp. 722-723.)

Appellants rely principally on *Williams* v. *Superior Court* (1973) 30 Cal.App.3d 8 [106 Cal.Rptr. 89], which applied these principles to a situation in which a prostitute was charged, along with her pimp, with felony conspiracy to commit prostitution and disorderly conduct (Pen. Code, § 647, subd. (b)), a misdemeanor. The court cited the aforementioned cases, and stated: "From these cases a rule emerges, applicable to the limited area in which Congress or the Legislature has dealt with crimes which necessarily involve the joint action of two or more persons, and where no punishment at all, or a lesser penalty, is provided for the conduct, or misconduct, of one of the participants." (*Id.*, at p. 15.) Based upon this rule, the court held that, "prostitutes for whose criminal participation with aborters or with pimps and panderers the Legislature has prescribed a lesser punishment, may not be subjected to greater punishment by misuse of the conspiracy statute." (*Id.*)

Respondent insists that *Williams* is not dispositive here because appellants were not charged with coconspirators appropriately subject to punishment for felony conspiracy. This contention, however, is misplaced.

Before severance, appellants were charged with codefendant Gloria Washington, a resident manager of the operation, who was initially charged with pimping. It is also a reasonable inference from the evidence that appellants were working, at least indirectly, for "Washington

Enterprises" or "Funky Denims," businesses linked with Gloria Washington and the East Williams Street apartment.

Appellate decisions have recognized an affirmative legislative intent to punish prostitutes less severely than those arrested for pimping (Pen. Code, § 266h), or pandering (266i). (*Williams* v. *Superior Court, supra,* 30 Cal.App.3d 8, 14.) It has been understood that, rather than being accomplices or coconspirators of those charged with felony pimping or pandering, prostitutes are criminally exploited by such persons. (*People* v. *De Paula, supra,* 43 Cal.2d 643, 647; *People* v. *Berger* (1960) 185 Cal.App.2d 16, 19-20 [7 Cal.Rptr. 827]; *People* v. *Frayer* (1956) 140 Cal.App.2d 597, 598-599 [295 P.2d 456].)

Thus, in *People* v. *Frey* (1964) 228 Cal.App.2d 33, 52 [39 Cal.Rptr. 49], the court declared: "In a prosecution under section 266h of the Penal Code, the prostitute whose earnings are taken is not an accomplice ... [citation]; and under section 266i of the Penal Code, the woman who is induced or procured to become an inmate of a house of ill-fame is not an accomplice ...." Moreover, as noted in *Williams* v. *Superior Court, supra,* 30 Cal.App.3d 8: "Since the Legislature has provided for a lesser penalty for prostitution (a misdemeanor) than for pimping (266h) and pandering (266i), which are both felonies, it would defeat the legislative classification to permit a prostitute to be charged with conspiracy in a case in which the alleged co-conspirator is either a pimp or panderer." (*Id.,* at p. 14.)

Moreover, a review of other cases supports the conclusion that the presence of a codefendant properly subject to felony conspiracy punishment is not a prerequisite to application of the rule. ▮ ▮▮▮ In *In re Williamson* (1954) 43 Cal.2d 651 [276 P.2d 593],[4] the defendant was charged with felony conspiracy (Pen. Code, § 182) to violate section 7028 of the Business and Professions Code where former section 7030 of the Business and Professions Code prescribed misdemeanor

---

[4]The holding in *In re Williamson* was also based upon a finding that section 7030 was a "specific" conspiracy statute which supplanted the general provisions of section 182. (*Id.,* at p. 654.) The "supplanting" doctrine is related to the rule discussed herein because the issue of whether a special statute supplants a general statute is primarily a question of legislative intent. (*Lyons* v. *Municipal Court* (1977) 75 Cal.App.3d 829, 838 [142 Cal.Rptr. 449].) Appellants cannot claim supplanting because "a special statute does not supplant a general statute unless *all* of the elements of the general statute are included in the special statute ...." (*People* v. *Ruster* (1976) 16 Cal.3d 690, 694 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269].) Section 315 does not contain the agreement element of section 182.

punishment for any conspiracy to violate section 7028. The court there ruled: "To conclude that the punishment for the violation of section 7030 of the Business and Professions Code is stated in section 182 of the Penal Code, which deals with conspiracies in general, would be inconsistent with the designation of the particular conspiracy as a misdemeanor." (*Id.*, at p. 655.) Similarly, in *People* v. *Farina* (1963) 220 Cal.App.2d 291, 294 [33 Cal.Rptr. 794], the court cited *In re Williamson* in ruling that a defendant could not be charged with felony conspiracy to violate Vehicle Code section 10852, because the latter "special" statute, while intended to "reach those who conspire to violate its terms," was meant to impose only misdemeanor punishment on such offenders.

More recently, in *Owen* v. *Superior Court* (1979) 88 Cal.App.3d 757 [152 Cal.Rptr. 88], it was held that a charge of "special circumstances" was improperly based upon allegations of conspiracy to commit murder. The court cited *People* v. *Buffum, supra*, 40 Cal.2d 709, and *Williams* v. *Superior Court, supra*, 30 Cal.App.3d 8, and reasoned that, "the Legislature did not intend a charge of special circumstance where no death occurs." (*Id.*, at p. 761.) The ruling was based upon the view that the use of conspiracy to elevate punishment based upon "special circumstances," absent actual homicide, was inconsistent with the legislative intent. (*Id.*, at p. 762.) As in *In re Williamson, supra*, 43 Cal.2d 651, and *People* v. *Farina, supra*, 220 Cal.App.2d 291, the rule stated in *Buffum* and *Williams* was applied without the limitation that a co-defendant must have been properly subject to felony conspiracy punishment *ab initio*.

The most recent expression of this rule is found in *People* v. *Mayers* (1980) 110 Cal.App.3d 809 [168 Cal.Rptr. 252], in which the defendant was convicted of participating in and operating a game of three-card "sting"—involving an amount less than $200, and constituting a crime punishable only as a misdemeanor under Penal Code section 332. In reversing the conspiracy conviction, the court explained: "The foregoing rule is necessary to prevent a general statute from swallowing up the exceptions contained in specific enactments. Section 332 makes Mayers' offense a misdemeanor. By simple logic, if section 182 is applicable under these narrow facts, any section 332 misdemeanor violation would be automatically elevated to a felony by applying the general law of section 182, subdivision 4. Noteworthy was the Legislature's revision in the year 1880 of section 332 from a pure felony statute to one which provided for 'punish[ment] as in case of *larceny* of

property of *like value.*' (§ 332; italics added.) Punishment here as a section 182, subdivision 4, felony would render this legislative amendment void." (*Id.*, at p. 814.)

In *Hutchins* v. *Municipal Court, supra*, 61 Cal.App.3d 77, relied upon by respondent, the court found no legislative intent to leave unpunished the conduct of an attorney who conspired with runners or cappers to solicit business. The present case is distinguishable. ■■ As noted, not only Penal Code section 315, but the entire statutory scheme dealing with prostitution and related crimes, reveals a legislative intent to punish those who commit acts of prostitution as misdemeanants, and those who induce the acts and thereby profit from them as felons. (See *People* v. *Smith* (1955) 44 Cal.2d 77, 80 [279 P.2d 33]; *Williams* v. *Superior Court, supra*, 30 Cal.App.3d 8, 14; *People* v. *Frey, supra*, 228 Cal.App.2d 33, 52; *People* v. *Berger, supra*, 185 Cal.App.2d 16, 19; *People* v. *Wilkins* (1955) 135 Cal.App.2d 371, 381 [287 P.2d 555].)

In light of this statutory scheme, the use of the conspiracy law to impose felony punishment upon persons merely residing in a house of prostitution in our view directly violates an affirmative legislative intent to punish those parties as misdemeanants. Such a conclusion is strengthened by a consideration of the policy behind the prohibition of criminal conspiracies (cf. *Callanan* v. *United States, supra*, 364 U.S. 587), which is not served where, as here, the presence of more than one prostitute in a house of prostitution does nothing to further the criminal objective of the prostitute, or make more likely the commission of other crimes. (See *Castro* v. *Superior Court* (1970) 9 Cal.App.3d 675, 708 [88 Cal.Rptr. 500], conc. opn. of Stephens, J.)

Permitting appellants to be convicted and punished as felons pursuant to section 182 would effectively elevate any misdemeanor violation of section 315 to a felony whenever more than one prostitute was found to "willfully reside" in a house of prostitution—an increased punishment clearly repugnant to legislative intent. (*Williams* v. *Superior Court, supra*, 30 Cal.App.3d 8, 15.)[5] ■ ■■ ■ The judgment against

---

[5]The use of conspiracy charges to enhance punishment has been frequently criticized by the courts and commentators alike. (See *Krulewitch* v. *United States* (1949) 336 U.S. 440, 447-449 [93 L.Ed. 790, 796-797, 69 S.Ct. 716], conc. opn. of Jackson, J.; *People* v. *Osslo* (1958) 50 Cal.2d 75, 106-107 [323 P.2d 397], dis. opn. of Carter, J.; *People* v. *Donahue* (1975) 46 Cal.App.3d 832, 839-840 [120 Cal.Rptr. 489]; Johnson, *The Unnecessary Crime of Conspiracy* (1973) 61 Cal.L.Rev. 1137, 1145.)

appellants is reversed, and the cause remanded with directions to dismiss the conspiracy charge and transfer the case to municipal court for appropriate action on misdemeanor charges of violation of Penal Code section 315. (*People* v. *Mayers, supra,* 110 Cal.App.3d 809, 817; *Williams* v. *Superior Court, supra,* 30 Cal.App.3d 8.)[6]

Racanelli, P. J., and Grodin, J., concurred.

---

[6]Reversal on this ground makes it unnecessary for us to consider appellants' remaining contentions. For the guidance of the trial court, however, we note our conclusion that appellants were denied effective assistance of counsel due to the failure of their trial attorneys to pursue the motion to suppress in superior court. (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859].) Upon review of the record, it is our view that this omission by trial counsel cannot be explained by any informed choice of tactics. (*People* v. *Farley* (1979) 90 Cal.App.3d 851, 866 [153 Cal.Rptr. 695].) Thus, in the event of retrial in municipal court, appellants should be afforded the opportunity of presenting the motion to suppress so as to preclude subsequent reversal based upon incompetency of counsel in the proceeding which led to this appeal.