[Crim. No. 8255. Third Dist. Nov. 14, 1975.]

In re BOBBY WILLIAMS on Habeas Corpus.

**COUNSEL**

Rowan K. Klein, under appointment by the Court of Appeal, for Petitioner.

Evelle J. Younger, Attorney General, and Gregory W. Baugher, Deputy Attorney General, for Respondent.

**OPINION**

**PUGLIA, P. J.**—In response to the within petition for habeas corpus, we ordered the California Adult Authority ("Authority") forthwith to fix petitioner's term or show cause before this court why it had not done so.

It appears from the return and traverse thereto that petitioner, an inmate of the state prison, is imprisoned upon a 1967 conviction of sodomy (Pen. Code, § 286).[1] He alleges that his term has never been

---

[1] All section references hereinafter are to the Penal Code.

fixed by the Adult Authority. This allegation is unchallenged by the Authority.[2] Accordingly, petitioner's indeterminate term of "not less than one year" (§ 286) is, in contemplation of law, a life sentence (§ 671; *In re Mills* (1961) 55 Cal.2d 646, 653 [12 Cal.Rptr. 483, 361 P.2d 15]; *In re Lee* (1918) 177 Cal. 690, 693 [171 P. 958]).

In its return, the Adult Authority avers that it is "diligently seeking to set the terms of all prisoners in the custody of the California Department of Corrections in accordance with the recent Supreme Court decision in *In re Rodriguez* 14 Cal.3d 639 (1975), and that [it] has formulated a comprehensive plan for the organized and speedy fixing of all terms."[3] The Authority further alleges that it "must be permitted to fix the terms of prisoners at regularly scheduled hearings, rather than at special hearings ordered by the courts, if full implementation of the *Rodriguez* decision is to be realized for all prisoners as soon as possible."

[2]Nevertheless, petitioner was released on parole in April 1973 but was arrested 22 days later and returned to prison for violation of parole. Thereafter this court rejected petitioner's due process challenge to the parole revocation proceedings. (*In re Williams* (1974) 36 Cal.App.3d 649 [111 Cal.Rptr. 870].)

[3]The declaration of the chairman of the Adult Authority, incorporated as an exhibit to the return, details the steps taken by the Adult Authority to implement the *Rodriguez* decision, suggests the magnitude of the problem, and identifies the order of priority in which hearings will be held to fix the "primary" terms mandated by *Rodriguez*. The declaration in its entirety states:

"I am the Chairman of the California Adult Authority. In this position, I am responsible for implementing the California Supreme Court's decision in In re Rodriguez as quickly as possible.

"To this end, the following steps have been undertaken:

"1. A group of attorneys and law students were hired to research the various statutory penalties imposed by the fifty states for some two hundred of the most common felonies in California.

"2. Department of Corrections research staff were taken from their regular duties to research the actual sentences imposed in other jurisdictions, and to research the actual sentences traditionally fixed by the Adult Authority over the past several decades.

"3. The statutory sentences for California crimes and their counterparts in other jurisdictions were compared with the actual sentences fixed for California crimes and their counterparts in other jurisdictions. From this comparison, 'ranges' were derived describing the usual sentence for a 'typical' crime of that type and the usual sentence for an 'aggravated' crime of that type.

"4. A variety of actual situations were analyzed in an attempt to develop criteria to distinguish between a typical crime of a given type and an aggravated crime of that type.

"5. Adult Authority staff developed procedures which were circulated among the hearing officers, the Department of Corrections, the Attorney General's office and various other interested parties.

"6. A schedule is being developed to move expeditiously to hear the approximately 40,000 persons (inmates and parolees) under the Adult Authority's jurisdiction as quickly as possible, in an order allowing priority to those persons in the greatest need of the hearing.

"This schedule is expected to proceed approximately as follows:

## I.

As his first contention petitioner suggests that the order established by the Adult Authority in which primary terms are to be fixed (see fn. 3, *ante,* p. 13), be modified in a manner better calculated to accomplish the mandate of *Rodriguez.* Petitioner proposes that first priority be assigned those prisoners who may be eligible for discharge because they have already been incarcerated longer than the time ranges suggested for their particular offenses in written policy of the Adult Authority adopted in response to *Rodriguez.*

The Adult Authority policy is set forth in its directive No. 75/30, effective September 2, 1975. The procedures for term fixing are established therein. The range in years within which the primary term for each of the more common felony offenses should ordinarily be set is suggested. There are two ranges for each offense considered: The shorter period, denominated the "typical range," and the longer period, denominated the "aggravated range." The directive specifies the criteria to be considered in selecting a range and fixing the precise term in a particular case. The suggested ranges need not be adhered to rigidly. Terms may be fixed either short of or in excess of the suggested ranges for particular offenses so long as they are within the statutory minima and maxima.

"Primary terms will be fixed beginning September 2, 1975. A primary term will be fixed for each inmate on each of his offenses the first time he appears before the Adult Authority on or after that date. All regularly scheduled cases will appear as they are now scheduled to appear.

"In addition to the regular calendars, I have been able to hire some additional hearing officers on an emergency basis. These hearing officers will begin on September 2, 1975 to hear and set primary terms for those inmates who appeared before the Adult Authority between March 1, 1975 and June 30, 1975 who received parole dates. It will take approximately six months to complete hearing these cases.

"Sometime next March, we hope to begin advancing the hearing dates for those persons who are scheduled to be heard after March, 1976. We hope to have set primary terms for all inmates, except those newly received by the Department, by September 1, 1976.

"Given the present resources of the Adult Authority, including the hiring of additional hearing officers on an emergency basis, it is impossible to advance individual inmates on hearing calendars except in a routine, orderly way which allows for the scheduling of hearing officers to the proper institution, the preparation of records for the hearing and the notification of the inmate. Because of the huge number of hearings which have to be conducted and the fact that each hearing will now take considerably longer than previously, the Adult Authority is unable to fix primary terms for each inmate any faster than the present schedule allows.

"I certify under penalty of perjury that the foregoing is true and correct.

" s/ R. K. PROCUNIER
".R. K. PROCUNIER
" Chairman, Adult Authority
" Date: 8/25/75 "

Section 286 was amended in the current regular session of the Legislature (Stats. 1975, ch. 71, No. 2, West's Cal. Legis. Service, p. 146 [Deering's Cal. Legis. Service, ch. 71, p. 231]; Stats. 1975, ch. 877, No. 7 West's Cal. Legis. Service, p. 2246 [No. 5 Deering's Cal. Legis. Service, p. 894]).) The 1975 amendments, effective January 1, 1976, work substantial changes in existing law. For example, anal intercourse between consenting adults is no longer proscribed except when committed by an inmate of a correctional facility (in which case it is punishable by maximum terms of either five years in prison or one year in jail (§ 286, subd. (e)); and bestiality, no longer included with the definition of sodomy, constitutes instead a misdemeanor (§ 286.5; Stats. 1975, ch. 71, No. 2, West's Cal. Legis. Service, p. 146 [Deering's Cal. Legis. Service, ch. 71, p. 231], effective Jan. 1, 1976). Different penalties are imposed by newly amended section 286, depending upon the presence of certain factors deemed by the Legislature to differentiate among degrees of culpability. Thus, sodomy committed by force or violence exercised in concert with another draws the most stringent penalty, imprisonment for 5 years to life (§ 286, subd. (d)); sodomy committed either by force or violence, or upon a person under the age of 14 between whom and the perpetrator there is an age disparity in excess of 10 years is punishable by imprisonment for not less than 3 years (§ 286, subd. (c)); sodomy committed upon a person under the age of 18 is punishable by a maximum term of either 5 years in prison or 1 year in jail (§ 286, subd. (b)(1)); sodony committed by a person over the age of 21 upon a person under the age of 16 is punishable by a maximum term not exceeding 5 years in prison (§ 286, subd. (b)(2); § 18).

The time ranges suggested for sodomy in the Authority's directive No. 75/30 are referable to the differing degrees of culpability established in the provisions of the newly amended but not yet effective section 286. For the most aggravated cases of sodomy, by force or violence, or upon a child under age 14, where the statutory maximum penalty is life imprisonment, the suggested range is 11 to 14 years. For an unaggravated case of sodomy upon a person under age 18, a less serious violation carrying a statutory maximum term of 15 years imprisonment, the suggested range is 3 to 5 years.

Petitioner was convicted under the present section 286 which imposes the same penalty for every violation thereof without regard to the offender's relative degree of culpability.[4] Petitioner's conviction preced-

---

[1]Section 286 provides: "Every person who is guilty of the infamous crime against nature, committed with mankind or with any animal, is punishable by imprisonment in the state prison not less than one year."

ed the enactment of section 286.1 (repealed effective Jan. 1, 1976, Stats. 1975, ch. 71, No. 2, West's Cal. Legis. Service, p. 146 [Deering's Cal. Legis. Service, ch. 71, p. 231]) which provides more severe punishment for an act of sodomy aggravated by use of force or violence exercised in concert with another. Thus, when petitioner was convicted, section 286 comprehended, and provided a single punishment for, every act constituting sodomy (and bestiality). It included conduct accompanied by force or violence posing a far greater danger to society than prohibited conduct at the other extreme of the spectrum, such as a violation involving consenting adults. It embraced acts perpetrated upon minors as well as upon those of mature years.

■ At some point in time, petitioner is entitled to have his term fixed, within the limits imposed by statute, at a number of years proportionate to his individual culpability, measured by circumstances existing at the time of the offense. (*In re Rodriguez* (1975) 14 Cal.3d 639, 652 [122 Cal.Rptr. 552, 537 P.2d 384].) Petitioner implies that were this done now, the application of the appropriate time range established by the Adult Authority for sodomy would result in a shorter term than the almost nine years he has already served. The problem with this surmise is that, in the state of the record before us, it is no more than just that, an unwarranted, unsupported supposition.

The record before us contains but meager information about petitioner or his offense.[5] We are presented with nothing from which we could determine that from among the myriad factual patterns in which sodomy may be committed, petitioner's offense was attended by conduct relatively less culpable than more so. In challenging the proportionality of his term, the burden is on petitioner to show that his sentence is constitutionally excessive in the light of the tripartite test first laid down in *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], which requires among other things a consideration of the facts and circumstances of the offense itself and the nature of the offender. (*People* v. *Wingo* (1975) 14 Cal.3d 169, 183 [121 Cal.Rptr. 97, 534 P.2d 1001].) From all that appears in the record, the circumstances surrounding petitioner's offense may well argue for application of the most protracted range—11 to 14 years—from among those suggested by current Adult Authority policy for the offense of sodomy. Accordingly, there is no legally competent basis upon which to conclude that priority application

---

[5]One thing that is clear from the record is that the act for which petitioner was convicted was committed upon a human being as distinguished from "any animal." (Pen. Code, § 286.)

to petitioner's case of Adult Authority term-fixing procedures and policies responsive to *Rodriguez* might result in an administrative determination that petitioner is presently being unconstitutionally imprisoned for a term out of proportion to his individual culpability.

## II.

Petitioner alleges that he is not presently scheduled to appear again before the Adult Authority until May 1976. Contending that the Authority has not acted promptly to fix his term, petitioner urges this court to order the Authority to fix his primary term within 30 days so that "he does not suffer another needless year of incarceration."

In *People* v. *Wingo, supra,* 14 Cal.3d at page 182, the Supreme Court made clear that a prisoner serving an indeterminate term has a right to have his term fixed proportionately to his offense. If within a "reasonable time" (*id.* at p. 183) the Adult Authority omits or declines to fix an inmate's term at less than the maximum, the maximum term will be deemed to be' the term fixed for purposes of measuring the proportionality of the term to the circumstances of the offense and the offender. (*People* v. *Wingo, supra,* at p. 183; see also *In re Rodriguez, supra,* 14 Cal.3d at p. 654, fn. 18.)

The simple answer to petitioner's second contention is that the Adult Authority has, by failing to reduce his time to less than life, in effect fixed his term at the maximum. Moreover, if a reasonable time has elapsed since the decisions in *Wingo* (decided May 9, 1975) and *Rodriguez* (decided June 30, 1975) within which the Adult Authority could have taken definitive action to fix petitioner's primary term at less than life, petitioner's remedy is to seek a judicial determination of the proportionality of a life term to his individual culpability in the light of the facts and circumstances of his case. (*People* v. *Wingo, supra,* at p. 183.) Assuming, arguendo, that the Authority has had a reasonable time to act on petitioner's case, petitioner, as we have already pointed out, has not demonstrated in this proceeding that a life term is disproportionate to his offense.

We are not content, however, to rest our disposition of petitioner's second contention wholly on the grounds just stated. We are mindful of the fact that the *Wingo* and *Rodriguez* decisions have

stimulated and will continue to generate a flood of petitions for habeas corpus relief from prisoners challenging the proportionality of terms which have not been fixed at less than the statutory maxima. ▉ Before such a challenge to proportionality by one convicted under a statute condemning a broad spectrum of conduct may be entertained, the Adult Authority must be given a reasonable time within which to fix a primary term. This may be done either by action specifying a term within the statutory minimum and maximum, or by declining to take action, in which case the term will be considered fixed at maximum. The question of what constitutes a reasonable time precedent to the maturing of a right judicially to challenge proportionality quite clearly constitutes a matter of continuing concern both to the executive and judicial branches of government, to prison inmates as a class, and to the public generally.

It begs the obvious to state that the *Wingo* and *Rodriguez* decisions effected a "substantial amendment" of the Indeterminate Sentence Law. (See *In re Rodriguez, supra,* at p. 659, dissent of Richardson, J.) Theretofore it was long settled and recently reaffirmed that a prisoner had "no vested right to the determination of his sentence at less than maximum." (*In re Schoengarth* (1967) 66 Cal.2d 295, 302 [57 Cal.Rptr. 600, 425 P.2d 200].) Similarly, it was authoritatively accepted that the Adult Authority's statutory power to determine and redetermine the length of imprisonment (§ 3020) included the power not only further to reduce a term already fixed at less than statutory maximum, but to enlarge such a term as well within the limits of the legislatively prescribed penalty. (See, e.g., *In re Winn* (1975) 13 Cal.3d 694, 699 [119 Cal.Rptr. 496, 532 P.2d 144].)

The Adult Authority's past term-fixing actions were undoubtedly reflective of the considerable latitude afforded by the statutory scheme and available to serve and protect both the public interest and the legitimate rights of convicted felons. Under the compulsion of *Wingo* and *Rodriguez,* the Authority must now review and refix the terms of thousands of convicted felons under its jurisdiction. This must be accomplished under an Indeterminate Sentence Law substantially restructured by *Wingo* and *Rodriguez* to substitute an element of rigidity for the flexibility formerly thought to exist. While flexibility remains further to reduce a primary term to acknowledge an inmate's progress toward rehabilitation, the converse is no longer true, the Adult Authority having now been denied the authority to increase a primary term up to the legal

maximum (*In re Rodriguez, supra,* 14 Cal.3d at p. 652) apparently notwithstanding compelling reasons therefor.

In fixing the primary term, the Adult Authority necessarily must proceed with circumspection. The very immutability of the primary term, once fixed, counsels the utmost caution. The Authority must apply to the circumstances of each case the tripartite test of proportionality first set out in *In re Lynch, supra,* 8 Cal.3d 410. (*In re Rodriguez, supra,* 14 Cal.3d at pp. 653-654, fn. 18.) The Authority itself anticipates that a term-fixing hearing "will now take considerably longer than previously, . . . " (Declaration of Adult Authority chairman, fn. 3 *ante,* p. 14.) Confronted with a task of huge proportions suddenly thrust upon it, the Authority is developing a schedule "to move expeditiously to hear the approximately 40,000 persons (inmates and parolees) under [its] jurisdiction as quickly as possible, in an order allowing priority to those persons in the greatest need of the hearing." (Declaration, fn. 3, *ante,* p. 13.) Following its proposed schedule, the Authority hopes to have primary terms set for all inmates presently under its jurisdiction by September 1, 1976. (Fn. 3, *ante,* p. 14.)

Implicit in petitioner's demand that his term be fixed within 30 days is the contention that a reasonable time within which to take such action in his case will by then have elapsed. The validity of this contention, however, must be assessed in the context of the total administrative burden upon the Adult Authority to implement the recently mandated changes in the operation of the Indeterminate Sentence Law. Petitioner's case is not unique or isolated. It is one of 40,000 that suddenly demand administrative action. We cannot say that the Authority, in moving to meet this challenge, is acting with less than entire good faith, or that another plan or schedule for administrative action would more quickly and efficiently vindicate the recently expanded rights of prison inmates and at the same time protect the legitimate public interest involved. A reasonable time to act in petitioner's case, or that of any other inmate similarly situated, must take into account the resources available to the administrative agency in conjunction with the magnitude of the task to be performed. (See *In re Tucker* (1971) 5 Cal.3d 171, 179 [95 Cal.Rptr. 761, 486 P.2d 657]; *In re Sturm* (1974) 11 Cal.3d 258, 272 [113 Cal.Rptr. 361, 521 P.2d 97].) Viewed in that light we cannot say that the method and schedule of proceeding set forth in the declaration of the Adult Authority chairman is unreasonable. Until there has been a fair opportunity to take administrative action, a claim that a reasonable time has elapsed in which to do so is premature.

The order to show cause is discharged. The petition for writ of habeas corpus is denied.

Regan, J., and Paras, J., concurred.

On December 12, 1975, the opinion was modified to read as printed above. Petitioner's application for a hearing by the Supreme Court was denied January 8, 1976.