[No. C006278. Third Dist. Jan. 8, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD E. WEST, Defendant and Appellant.

[Opinion certified for partial publication.[1]]

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I-III.

COUNSEL

Dwight M. Samuel, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, William G. Prahl and Mary Jane Hamilton, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CARR, J.—Defendant, a civilian employee of the Yuba County jail, was convicted of forcible sodomy (Pen. Code, § 286, subd. (c))[2] (count I), sexual battery (§ 243.4) (count II), and sodomy committed while confined in a county jail (§ 286, subd. (e)) (count VII).[3] All crimes were committed against D.H., an inmate at the jail. (D.H. is hereinafter referred to by his initials or as the victim.) The jury acquitted defendant on a fourth count, sodomy by threat of authority (§ 286, subd. (k)) (count III).

Defendant was sentenced to the lower terms of three years on count I, two years on count II and 16 months on counts III with sentences on counts II and III stayed pursuant to section 654. On appeal, defendant contends: (1) the court erred in admitting evidence of other crimes, (2) there is insufficient evidence to support the conviction for forcible sodomy, and (3) prosecutorial misconduct compels reversal. On our own motion, we requested supplemental briefing on the question of whether, as a matter of law, defendant by reason of his status as a nonprisoner could be convicted in count VII of violating section 286, subdivision (e). We shall reverse the judgment as to counts II and VII but affirm the conviction for count I.

FACTUAL AND PROCEDURAL BACKGROUND

In 1983, defendant began working as a civilian employee for the Yuba County jail. His duties as food service manager included managing the jail commissary and supervising the trustees and civilian assistants who worked there.

In 1988, an eight-count information was filed charging defendant with numerous sex offenses committed against two inmates, D.H. and H.B., and the case proceeded to trial. The jury acquitted defendant on the counts relating to H.B. and deadlocked on the counts relating to D.H. It is the retrial of these latter counts that is at issue in this appeal. At trial, the following evidence was adduced:

While serving a 120-day term at the Yuba County jail, D.H. worked as a trustee and was often assigned to the commissary under defendant's supervision. On January 11, 1988, only a few days before he was due to be released, D.H. went to the commissary to take inventory. Defendant arrived

---

[2] All statutory references are to the Penal Code unless otherwise indicated.

[3] The record sometimes refers to this count as count IV. As discussed, *infra*, this case stems from a retrial in which only certain counts were retried. The information was not amended to reflect this fact.

a few minutes later to help and stood behind him. When D.H. leaned over a cart to write down the inventory count, defendant rubbed D.H.'s hair and touched his buttocks. As D.H. stood with his back to defendant, defendant began unbuttoning the victim's pants and pulled D.H. into him by putting his arm around the victim's waist. Defendant then pulled the victim's pants and underwear down to his thighs and unzipped his own pants. Defendant tried to insert his penis into the victim's anus. The victim testified this hurt. Defendant also touched the victim's penis with his hand. When the victim turned his head around, he saw defendant had an erection. The victim pulled away from defendant, pulled up his pants and walked out of the commissary.

The victim testified he was frightened throughout the incident and did not leave sooner because he thought defendant would punish him. He believed defendant had a great deal of power at the jail and could rescind his good-time/work-time credits, prevent his early release, or move him into a different cell.

The victim stated defendant had patted him on the buttocks a few times previously and had run his fingers through his hair. However, on several occasions when D.H. accompanied defendant on errands away from the jail, no sexual advances were made. Defendant discussed homosexuality with the victim on several occasions. The victim asserted he did not immediately report the full extent of defendant's conduct because he was embarrassed by what had happened. He reiterated that he did not seek help during the assault because he was afraid defendant would "pull" his good-time/work-time credits.

Over the repeated objections of defendant, the prosecution presented the testimony of D.M., who had been incarcerated at the jail in 1987 and had also served as a trustee in the commissary under defendant's supervision. D.M. had not been called as a witness in the previous trial. D.M. testified that approximately two or three weeks before his release from jail, he had been stocking the commissary when defendant came up behind him, put his arms around D.M.'s shoulders, and rubbed his pelvis against D.M.'s buttocks. D.M. said no further sexual advances were made: defendant did not expose himself, try to remove D.M.'s clothing, or remove his own clothing.

The supervising deputy sheriff of the jail and the jail commander both testified defendant was an excellent supervisor who needed little guidance from the jail authorities. Defendant had the power to fire a trustee but could

not revoke good-time or work-time credits. Defendant could also recommend an early release for trustees.[4]

Defendant testified on his own behalf and described the events of January 11 as follows: At approximately 7:30 that morning, defendant called D.H. into his office to discuss D.H.'s failure to complete his job the previous night. At about 9:45 a.m., the men went into the commissary to stock the inventory. As they finished, D.H. backed into defendant and rubbed his pelvis against him in a circular motion, giving defendant an erection. D.H. turned around, unzipped defendant's pants, lowered his own pants and underwear, and placed defendant's penis on his buttocks. D.H. then pulled away slightly, turned around and masturbated. He then pulled up his clothing and left. Defendant did not report the incident to the authorities because he was afraid he would lose his job.

A criminologist testified that seminal fluid was found on the front of a pair of briefs taken from the victim soon after the incident. The semen came from a person with type A blood, the victim's blood type.[5]

Defendant did not remember ever touching D.H. but said he may have touched D.H. on the buttocks when telling him to hurry up and may have touched D.H.'s hair to keep it away from food. He denied having a sexual intent in any of these touchings. He also denied rubbing against D.M. but said he may have collided with him if the storeroom was crowded.

The jury convicted defendant on three counts: forcible sodomy, sexual battery, and "sodomy in the county jail." This appeal followed.

DISCUSSION

I-III*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

IV

Finally, on our own motion, we requested supplemental briefing from the parties on the question of whether defendant, who was not confined in the county jail, could be convicted of violating section 286,

---

[4]These "early kicks," consisting of up to five days additional credit, were generally used only when the jail was overcrowded.

[5]Defendant was type O.

*See footnote, *ante*, page 892.

subdivision (e). That statute provides in pertinent part: "Any person who participates in an act of sodomy with any person of any age *while confined in any state prison . . . or in any local detention facility . . .* shall be punished by imprisonment in the state prison, or in a county jail for a period of not more than one year."

Defendant responded he could not be convicted of this offense because the statute applies only to those persons who commit an act of sodomy "while confined" in a prison or detention facility. The People disagree, asserting the statute must be read to prohibit any act of sodomy occurring in a penal institution.[11] Defendant's assertion comports with the statutory language and the proper interpretation to be accorded such language. We therefore determine the statute has no application to persons who are not inmates in a state prison or local detention facility.

■ "It is settled that ' "We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' . . ." ' [Citation.] Stated otherwise, 'When statutory language is thus clear and unambiguous *there is no need for construction, and the courts should not indulge in it.'* [Citations.] [¶] We have declined to follow the plain meaning of a statute only when it would inevitably have frustrated the manifest purposes of the legislation as a whole or led to absurd results. [Citations.]" (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].)

■ Section 286, subdivision (e) punishes "any person who participates in an act of sodomy with any person of any age while confined in any state prison . . . or in any local detention facility . . . ." The question presented is who must be confined for the statute to apply: the perpetrator, the victim, or either of them.

Relying on grammatical rules and other means of divining "legislative intent," the People assert the "while confined" phrase refers to both the offender and the victim, i.e., the statute is violated if either the offender or the victim is confined in a penal institution.[12] In arguing the phrase applies to the victim of the crime, the People note relative or modifying phrases are generally to be applied to the words immediately preceding them. (*Oliva* v. *Swoap* (1976) 59 Cal.App.3d 130, 138 [130 Cal.Rptr. 411].) Consequently,

[11] This view is consistent with the prosecutor's argument at trial and the language used on the jury's verdict form which referred to this crime as prohibiting "sodomy in a county jail."

[12] The People appear to argue that the "while confined" language applies only to the victim. However, we construe this argument to be that the statute applies whenever the perpetrator *or* the victim is so confined. Otherwise, the unlikely position for the People would be that the section in question is inapplicable if an inmate sodomizes a jail employee.

the People argue the "while confined" phrase must refer to the second "any person," i.e., the victim. The People further assert that no comma separates the second "any person" from "while confined," suggesting the phrases must relate to each other. Such a contorted interpretation ignores the plain meaning of the word "while."

■ As a conjunction, "while" means "during the time that" (Webster's Ninth New Collegiate Dict. (1984) p. 1343) and must therefore temporally relate two verbs to each other.[13] (See Fowler, A Dictionary of Modern English Usage (2d ed. 1965) pp. 706-707.) ■ In section 286, subdivision (e), the phrase "while confined" must relate to the statute's one other verb, "participates," and consequently the subject of that verb, the offender. It has no relationship to the second "any person," the object of the sentence and the victim of the crime.

The grammar rules cited by the People are of no relevance here. There is no comma between the second "any person" and the "while confined" clause because none is needed and would in fact be incorrect. The physical placement of the clause is also immaterial as the "while confined" phrase cannot grammatically refer to anything other than another verb; the fact that it is closer to the second "any person" clause is immaterial. Viewing the clear language of section 286, subdivision (e) in its grammatical posture compels the conclusion that it applies only if the perpetrator is confined in a state prison or local detention facility.[14]

This conclusion is not altered if we examine the materials submitted by the People in support of their legislative intent argument.[15] The 1975 amendments to the Penal Code were aimed at decriminalizing private sexual activity between consenting adults. (Compare, e.g., Stats. 1952, 1st Ex. Sess., ch. 23, § 2, p. 380 with Stats. 1975, ch. 71, § 7, p. 133 and Stats. 1975, ch. 877, § 1, p. 1957.) Subdivision (e) was included in section 286 as an exception to this general liberalization of the sodomy laws. As this court explained in dicta, this legislation removed the legal prohibitions against sodomy between consenting adults "except when committed by an inmate of a correctional facility." (*In re Williams* (1975) 53 Cal.App.3d 10, 15 [125 Cal.Rptr. 457].)

---

[13] Under the People's theory, the phrase "while confined" is equivalent to "who is confined." However, these terms connote entirely different meanings and are not synonymous.

[14] Contrary to the People's view, we do not think it significant that the statute uses the phrase "any person" rather than "inmate" to describe the perpetrator. Given the variety of settings labelled "state prison" and "local detention facility" (see §§ 4504, 6031.4), the term "inmate" may not be appropriate in all circumstances.

[15] We have previously granted the People's motion to take judicial notice of these materials, which include bill histories, committee analyses, and correspondence relating to this legislation.

None of the legislative materials submitted by the People contradicts this interpretation, i.e., that subdivision (e) prohibits an *inmate* from committing any act of sodomy, even if consensual. As the People implicitly acknowledge, it is unlikely that in enacting this section, the Legislature ever considered the possibility of acts of sodomy occurring between civilian jail employees and jail inmates. The focus was on prohibiting any sexual activity, consensual or otherwise, between inmates. As the court explained in the context of a similar statute prohibiting anyone confined in state prison from participating in an act of oral copulation,[16] "The obvious governmental purpose behind the statute is the maintenance of prison discipline and order. The statute appears to be rationally related to that purpose because homosexual contacts between prisoners can lead to violent altercations . . . . [V]ictims may be reluctant to report sexual assaults occurring in the prisons because they fear retribution from other prisoners with whom they must live in close proximity. Therefore [section 288a] subdivision (e) helps to control violence in penal institutions by prohibiting sexual acts which though forced, might not be reported as such. Furthermore, even consensual acts of oral copulation between prisoners might have a disruptive effect when viewed by the other prisoners who may constitute a captive audience." (*People* v. *Santibanez* (1979) 91 Cal.App.3d 287, 291 [154 Cal.Rptr. 74].)

Finally, we note we would reach the same result even if we were to find the People's position offers a second reasonable interpretation of the statute. ■ "[W]hen the statutory language in the Penal Code is reasonably susceptible of two constructions, courts are required to adopt that construction which is more favorable to the offender. [Citation.] ' "The defendant is entitled to the benefit of any reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute." ' [Citation.]" (*People* v. *Jones* (1984) 155 Cal.App.3d 153, 186 [202 Cal.Rptr. 162]; see also *Hale* v. *Morgan* (1978) 22 Cal.3d 388, 405 [149 Cal.Rptr. 375, 584 P.2d 512].)

■ Because defendant was not confined in the Yuba County jail when he committed the instant offense, his conviction on count VII must be reversed.

---

[16] The legislation changing California's sodomy laws also decriminalized other consensual sexual activity, such as oral copulation. (Compare Stats. 1955, ch. 274, § 1, p. 729 with Stats. 1975, ch. 71, § 10, p. 134, and Stats. 1975, ch. 877, § 2, p. 1958.) Certain conduct remained criminalized, however. Subdivision (e) was added to section 288a to prohibit any person from participating in an act of oral copulation while confined in a state prison or local detention facility.

## DISPOSITION

The judgments of conviction on counts II and VII are reversed. In all other respects, the judgment is affirmed. The trial court is directed to prepare a new abstract of judgment in conformity with this opinion and to furnish a certified copy thereof to the Department of Corrections.[17]

Blease, Acting P. J., and Davis, J., concurred.

---

[17] The trial court sentenced defendant to the lower term of three years on count I and stayed sentences on counts II and VII pursuant to section 654. As we reverse only these latter counts, we need not remand to the trial court for resentencing.