[No. F046238. Fifth Dist. Feb. 7, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
DEANDRE LEE, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II of the Discussion.

## COUNSEL

Julia L. Bancroft, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Kathleen A. McKenna and Lloyd G. Carter, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ARDAIZ, P. J.**—A jury convicted DeAndre Lee of conspiracy to furnish a controlled substance to a prison inmate (Pen. Code,[1] §§ 182, subd. (a)(1), 4573.9), and he admitted having suffered a prior conviction under the three strikes law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). He was sentenced to 12 years in prison and ordered to pay a restitution fine, and he now appeals.

In the published portion of our opinion, we will reject Lee's contention that, as a prison inmate, he could not properly be charged with, or convicted of, conspiring to violate section 4573.9. In the unpublished portion of our opinion, we will conclude the trial court did not improperly sentence Lee to an upper, doubled term. Accordingly, we will affirm the judgment.

## FACTS

As a result of monitored telephone conversations between Lee, an inmate in the Substance Abuse Treatment Facility (SATF) at Corcoran State Prison, and his wife, Felicia Rush, correctional officers suspected Rush would be smuggling drugs into the prison at Lee's behest on July 12, 2003.[2] A search warrant was obtained for Rush, who was intercepted upon her arrival for visitation that day. During the search, she relinquished a green condom containing three bindles of marijuana and loose tobacco; and a clear condom

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] Drugs can be passed from visitor to inmate during contact visits, or, in the case of noncontact visits, with the assistance of inmate porters who work in the visiting room.

containing three small bindles of marijuana, two separately packaged rocks of cocaine base, and loose tobacco. The items had been secreted in her bra.

In her initial statements to investigators, Rush maintained that, although she had had a conversation with Lee confirming the items she was to bring in, she had been told to bring in the drugs by a noninmate she knew only as Stephon. This person was subsequently identified as Stephon Devine, an employee of the counseling program provider at SATF. By the time he was identified, he was no longer employed at the institution. Rush agreed to help the district attorney's office in its investigation of him, then informed the investigator that she had lied about Lee's lack of involvement. Further investigation revealed that Devine, Lee, and Rush were working together.[3]

Rush testified at trial while facing a felony charge of bringing drugs into a state prison. She admitted that, prior to July 12, she had brought in tobacco and marijuana quite a few times. If she and Lee had noncontact visits, he would signal her when she was supposed to give the contraband to one of the inmate workers in the visiting room. If they had contact visits, she usually would give the drugs directly to Lee.

According to Rush, she started bringing drugs into the prison because she was afraid of Lee. She initially received a telephone call at her office in Santa Monica. The caller told her to buy drugs and bring them to the prison. She thought it was a joke, but, a few hours later, two individuals came to her office and threatened her. She also received a telephone call from Lee's aunt, telling her that she had to give him money and cooperate with him because she was always putting him in a bind. Lee subsequently telephoned her and told her to cooperate in bringing the items into the prison. He confirmed that he knew about the people who came to her office. In addition to the items she brought to Lee, he and Devine, who were working together, had her bring tobacco and money to the prison and leave it for Devine at prearranged locations. She sent money to Devine, as well.

The drugs Rush brought into the prison on July 12 were intended for Lee, who was the one who told her to bring them in. In an earlier visit, Lee had told her what she was supposed to do, because she would "cost him, put him in a bind and all his people." He told her how to package the items, as well as the number of items to bring.

---

[3] Following his September 25 arrest for conspiracy to introduce narcotics into a state prison, Devine told investigators that, while employed as a counselor in Lee's facility, he brought tobacco to Lee, and Rush paid him for doing so. He adamantly denied being involved in any drug transactions.

## DISCUSSION

### I

### AN INMATE CAN BE CONVICTED OF CONSPIRACY TO VIOLATE SECTION 4573.9

Section 4573.9 provides, in pertinent part: "Notwithstanding any other provision of law, any person, *other than a person held in custody*, who sells, furnishes, administers, or gives away, or offers to sell, furnish, administer, or give away to any person held in custody in any state prison . . . any controlled substance, the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code, if the recipient is not authorized to possess the same . . . , is guilty of a felony punishable by imprisonment in the state prison for two, four, or six years." (Italics added.)[4]

The parties agree that Lee could not commit the substantive offense because, as an inmate, he was not a person "other than a person held in custody." (§ 4573.9; cf. *People v. West* (1991) 226 Cal.App.3d 892, 894, 898–899 [277 Cal.Rptr. 237].) Lee was not convicted of violating section 4573.9, however, but of *conspiracy* to violate that statute. Lee says he could not properly be charged with, or convicted of, conspiracy because the language of section 4573.9 specifically precludes him from punishment and, inasmuch as other statutes provide for lesser punishment for inmates, to apply the law of conspiracy under the circumstances present here would run contrary to the expressed legislative intent. Respondent counters that conspiracy is a separate and distinct offense from the substantive crime committed, and Lee has not shown the existence of an affirmative legislative intent that he go unpunished for his role in the charged criminal conduct.[5]

"Pursuant to section 182, subdivision (a)(1), a conspiracy consists of two or more persons conspiring to commit any crime. A conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree to conspire to commit an offense, as well as the specific

---

[4] Marijuana, cocaine, and cocaine base are among the prohibited controlled substances. (Health & Saf. Code, §§ 11054, subds. (d)(13), (f)(1), 11055, subd. (b)(6), 11350, 11357.)

[5] It appears Lee's claim might appropriately have been raised by demurrer in the trial court. (See, e.g., § 1004, subds. 4 [demurrer lies where it appears on face of accusatory pleading that facts stated do not constitute public offense], 5 [demurrer lies where it appears on face of accusatory pleading that it contains matter which, if true, would constitute legal bar to prosecution].) As we have found no authority holding that a demurrer is a condition precedent to raising the issue on appeal from a conviction, and respondent does not make such a claim, we do not further address the issue. (We note that, if a demurrer were required in order to preserve the issue for review, we would still end up addressing the merits by way of a claim of ineffective assistance of counsel based on defense counsel's failure to demur to the information.)

intent to commit the elements of that offense, together with proof of the commission of an overt act 'by one or more of the parties to such agreement' in furtherance of the conspiracy. [Citations.] [¶] Criminal conspiracy is an offense distinct from the actual commission of a criminal offense that is the object of the conspiracy. [Citations.] . . . [¶] ' " 'In contemplation of law the act of one [conspirator] is the act of all. Each is responsible for everything done by his confederates, which follows incidentally in the execution of the common design as one of its probable and natural consequences . . . .' " ' [Citations.]" (*People v. Morante* (1999) 20 Cal.4th 403, 416–417 [84 Cal.Rptr.2d 665, 975 P.2d 1071], fns. omitted.)

■ " '[T]he basic conspiracy principle has some place in modern criminal law, because to unite, back of a criminal purpose, the strength, opportunities and resources of many is obviously more dangerous and more difficult to police than the efforts of a lone wrongdoer.' [Citation.] Collaboration magnifies the risk to society both by increasing the likelihood that a given quantum of harm will be successfully produced and by increasing the amount of harm that can be inflicted. As the United States Supreme Court wrote in *Callanan v. United States* (1961) 364 U.S. 587, 593–594 [5 L.Ed.2d 312, 81 S.Ct. 321]: 'Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.' (Fn. omitted.) [Citations.]

"Thus wrongful conduct by such combination should be criminally punished even when the same acts would be excused or receive a lesser punishment when performed by an individual; group criminal conduct calls for enhanced punishment, and society has a justifiable right and obligation to intervene at an earlier stage." (*People v. Williams* (1980) 101 Cal.App.3d 711, 721 [161 Cal.Rptr. 830].)

In light of the foregoing, "[t]here are many cases . . . in which it has been recognized that a defendant may be liable to prosecution for conspiracy to commit a given crime even though he is incapable of committing the crime itself. [Citations.]" (*People v. Buffum* (1953) 40 Cal.2d 709, 722 [256 P.2d 317], overruled on other grounds in *People v. Morante, supra,* 20 Cal.4th at p. 432; *People v. Roberts* (1983) 139 Cal.App.3d 290, 293 [188 Cal.Rptr. 586];

cf. *People v. Wallin* (1948) 32 Cal.2d 803, 806–807 [197 P.2d 734].) Lee now relies on narrowly drawn, interconnected exceptions to this general rule, all of which are founded, however implicitly, on the notion that legislative intent is paramount in determining whether a party can be prosecuted for conspiracy in a given situation.

■ The first such exception is Wharton's Rule (1 Anderson, Wharton's Criminal Law and Procedure (1957) p. 191), which provides that where "the cooperation of two or more persons is necessary to the commission of the substantive crime, and there is no ingredient of an alleged conspiracy that is not present in the substantive crime, then the persons necessarily involved cannot be charged with conspiracy to commit the substantive offense and also with the substantive crime itself. [Citations.] . . . The rule is considered in modern legal thinking as an aid in construction of statutes, a presumption that the Legislature intended the general conspiracy section be merged with the more specific substantive offense. [Citation.]" (*People v. Mayers* (1980) 110 Cal.App.3d 809, 815 [168 Cal.Rptr. 252]; see, e.g., *Pinkerton v. United States* (1946) 328 U.S. 640, 643 [90 L.Ed. 1489, 66 S.Ct. 1180]; *People v. Keyes* (1930) 103 Cal.App. 624, 646 [284 P. 1096] [on denial of petn. for hearing by Cal. Supreme Ct.].) It applies only where it is impossible to have the substantive offense "*without concerted effort amounting to conspiracy . . . .*" (*Mayers*, at p. 816, italics added.)[6] As the United States Supreme Court explained in *Iannelli v. United States* (1975) 420 U.S. 770, 783–784 [43 L.Ed.2d 616, 95 S.Ct. 1284], Wharton's Rule "has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary. ■ The classic Wharton's Rule offenses—adultery, incest, bigamy, duelling—are crimes that are characterized by the general congruence of the agreement and the completed substantive offense. The parties to the agreement are the only persons who participate in commission of the substantive offense, and the immediate consequences of the crime rest on the parties themselves rather than on society at large. [Citation.] Finally, the agreement that attends the substantive offense does not appear likely to pose the distinct kinds of threats to society that the law of conspiracy seeks to avert. It cannot, for example, readily be assumed that an agreement to commit an offense of this nature will produce agreements to engage in a more general pattern of criminal conduct. [Citations.]" (*Ibid.*, fns. omitted.)

■ Section 4573.9 is not the type of crime usually seen as a classic Wharton's Rule offense. (See *Iannelli v. United States, supra,* 420 U.S. at

---

[6] Thus, in *Mayers*, the defendant was convicted of operating a game of three-card monte, together with conspiracy to cheat and defraud another in a three-card monte game. (*People v. Mayers, supra,* 110 Cal.App.3d at p. 811.) In holding that the defendant could not be convicted of conspiracy, the Court of Appeal pointed out that the game of three-card monte requires the concerted effort of a dealer and a shill. (*Id.* at p. 815.)

pp. 782–785.) More importantly, it is possible to have the substantive offense "without concerted effort amounting to conspiracy . . . ." (*People v. Mayers, supra,* 110 Cal.App.3d at p. 816.) For instance, one may administer a controlled substance without the consent, or against the will, of the person to whom it is administered, and one may offer to sell or give away a controlled substance to one who does not accept the offer. Thus, while two people may act in concert to violate the statute, such cooperation is not necessary. (See, e.g., *Gebardi v. United States* (1932) 287 U.S. 112, 121–122 [77 L.Ed. 206, 53 S.Ct. 35] [where woman consents to own transportation, Mann Act violation not prosecutable as conspiracy because it is impossible to commit substantive offense without cooperative action]; *People v. Tatman* (1993) 20 Cal.App.4th 1, 9 [24 Cal.Rptr.2d 480] [general conspiracy statute in Pen. Code can be used to elevate misdemeanor offenses in Fish & G. Code to felony; while two persons can act in concert to poach large quantities of abalone, one person can do so alone].) Moreover, while the person who buys or obtains a drug is not generally an accomplice of the person who sells or furnishes it (*People v. Label* (1974) 43 Cal.App.3d 766, 770–771 [119 Cal.Rptr. 522]), an exception exists where, as here, the participants "conspire together in a prearranged plan . . . ." (*People v. Lima* (1944) 25 Cal.2d 573, 577 [154 P.2d 698] [although thief and receiver of stolen goods generally are not accomplices, exception exists where they conspire together in prearranged plan for one to steal and deliver property to other, and, pursuant to such plan, one does steal and deliver to other].)[7]

In light of the foregoing, Wharton's Rule does not prevent Lee from being charged with, and convicted of, conspiring to violate section 4573.9.

■ The second exception is found in cases holding that, where the Legislature has dealt with crimes which necessarily involve the joint action of two or more persons and where no punishment is provided for the conduct of one of the parties, that person cannot be charged as a principal, coconspirator, or aider and abettor if (1) a different and more lenient criminal statute is found to be controlling as to such person, or (2) there is an affirmative legislative intent that such participant go unpunished. As Lee primarily relies on this exception, we examine the various cases.

---

[7] Respondent points to the fact that Devine and perhaps others were also involved in the conspiracy. An exception to Wharton's Rule exists "where one of the actors joins with third persons on his side of the transaction . . . ." (*People v. Lewis* (1963) 214 Cal.App.2d 799, 801 [29 Cal.Rptr. 825]; see *Iannelli v. United States, supra,* 420 U.S. at p. 782, fn. 15.) "The rationale supporting this exception appears to be that the addition of a third party enhances the dangers presented by the crime." (*Iannelli,* at p. 782, fn. 15.) We do not rely on this exception because, given the evidence adduced at trial, it is impossible to determine whether Devine was involved in a conspiracy to smuggle anything other than tobacco, a substance which does not fall within the provisions of section 4573.9, or whether anyone else was involved in the conspiracy between Lee and Rush.

In *Gebardi v. United States, supra,* 287 U.S. 112, the United States Supreme Court, noting that criminal transportation under the Mann Act could be effected without the woman's consent, "perceive[d] in the failure of the Mann Act to condemn the woman's participation in those transportations which are effected with her mere consent, evidence of an affirmative legislative policy to leave her acquiescence unpunished." (287 U.S. at p. 123.) Accordingly, it held, the woman could neither violate the Mann Act nor be convicted of conspiracy to do so. (*Id.* at p. 123.)

In *In Re Cooper* (1912) 162 Cal. 81 [121 P. 318], the California Supreme Court determined that only a married person could commit the then existing crime of adultery. (*Id.* at p. 85.) As a result, the statute which made "only the person 'who lives in a state of . . . adultery' guilty of the public offense therein defined, thus impliedly exclud[ed] the idea of any guilt of such offense on the part of the unmarried participant whose only part in the affair has been to live with the married party in the state forbidden to him by the law." (*Id.* at p. 86.) Where the idea of guilt of one participant "is thus excluded by the terms of the statute defining the offense," that person cannot be punished as an aider and abettor in the offense, even though he or she may be considered an accomplice under section 31.[8] (*Cooper,* at p. 86.)

In *People v. Clapp* (1944) 24 Cal.2d 835 [151 P.2d 237] (*Clapp*), the defendants were convicted of performing an abortion in violation of former section 274. The convictions were based on the testimony of the woman who underwent the operation, and of her mother-in-law and sister-in-law, who were present. On appeal, the defendants claimed that, since all three witnesses were accomplices, their testimony required corroboration under section 1111. (*Clapp,* at p. 836.) The California Supreme Court found it necessary to determine whether the witnesses were subject to prosecution under the provisions the defendants were accused of violating, or whether the acts of the witness participating in the transaction constituted a separate and distinct offense. (*Id.* at p. 838.) The court stated: "If a statutory provision so defines a crime that the participation of two or more persons is necessary for its commission, but prescribes punishment for the acts of certain participants only, and another statutory provision prescribes punishment for the acts of participants not subject to the first provision, it is clear that the latter are criminally liable only under the specific provision relating to their participation in the criminal transaction. The specific provision making the acts of participation in the transaction a separate offense supersedes the general provision in section 31 . . . that such acts subject the participant in

---

[8] Section 31 provides, in part: "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, . . . are principals in any crime so committed."

the crime of the accused to prosecution for its commission. [Citations.]" (*Clapp*, at pp. 838–839.) Accordingly, because a separate provision of the Penal Code (former § 275) prescribed punishment for a woman who submits to an illegal abortion, the witness who underwent the abortion could not be punishable as a principal for the crime of abortion, the distinct offense for which the defendants were on trial, and so was not an accomplice for purposes of the corroboration requirement. (*Clapp*, at p. 839.)

In *People v. Buffum, supra*, 40 Cal.2d 709, the defendants were convicted of conspiring to induce miscarriages under former section 274. The trial court refused to instruct that the women involved were accomplices for purposes of section 1111. (*Buffum*, at pp. 714, 720.) The defendants argued that while, under *Clapp*, the women were not accomplices with respect to an actual violation of the statute, they were coconspirators of the person who performed the abortion and, accordingly, subject to prosecution for the identical offense of conspiracy to violate the anti-abortion statute. (*Buffum*, at p. 721.) The court found section 182 to be closely analogous to section 31, which the *Clapp* court had construed, and held: "[T]he same reasoning which precludes the application of section 31 for the purpose of prosecuting a woman as a principal under section 274 likewise precludes the use of section 182 in prosecuting her for conspiracy to violate section 274. Since . . . the Legislature has expressed an intent that a woman who consents and voluntarily submits to an abortion is not punishable under section 274, it clearly did not intend that she should be punished for conspiracy to violate that statute. Although the language of section 182, standing alone, is sufficiently broad to include any agreement to procure an abortion, the provision, like that in section 31, is general and must yield to the specific provision in section 275. Any other construction would mean that the conspiracy law could be used as a device for defeating the legislative intention of imposing a lesser penalty on a woman who violates section 275 than is prescribed for a person convicted under section 274." (*Buffum*, at p. 722.) The court acknowledged the line of cases recognizing that a defendant may be prosecuted for conspiracy to commit a certain crime even though he or she is incapable of committing the crime itself, but reasoned: "This rule . . . does not apply where the statutes defining the substantive offense disclose an affirmative legislative policy that the conduct of one of the parties involved shall be unpunished. [Citations.] Similarly, the rule should not be applied where, as here, the Legislature singles out one of the parties for special treatment by enacting a statute which deals only with the conduct of that person and provides for a lesser punishment than is given to the other party." (*Id.* at pp. 722–723.) Accordingly, the court concluded that the women in question were not subject to prosecution for conspiracy to violate section 274; hence, none was an accomplice. (*Buffum*, at p. 723.)

In *Williams v. Superior Court* (1973) 30 Cal.App.3d 8 [106 Cal.Rptr. 89] (*Williams*), the issue before the court was whether a prostitute could be

charged with both prostitution and with conspiring with her pimp to commit prostitution. (*Id.* at p. 10.) After examining many of the foregoing opinions, as well as *People v. Berger* (1960) 185 Cal.App.2d 16, 19–20 [7 Cal.Rptr. 827] (which held that the woman who is exploited by a male in violation of § 266h is not an accomplice of the man who exploits her), the appellate court concluded: "Since the Legislature provided for a lesser penalty for prostitution (a misdemeanor) than for pimping (266h) and pandering (266i), which are both felonies, it would defeat the legislative classification to permit a prostitute to be charged with conspiracy in a case in which the alleged co-conspirator is either a pimp or panderer. [¶] . . . [¶] From these cases a rule emerges, applicable to the limited area in which Congress or the Legislature has dealt with crimes which necessarily involve the joint action of two or more persons, and where no punishment at all, or a lesser penalty, is provided for the conduct, or misconduct, of one of the participants. Thus, the female 'transportee' in a Mann Act situation and the unmarried participant in adulterous intercourse, whose participation is not denounced by the statute, cannot be charged with criminal conduct by the improper use of the conspiracy statute. By the same token, abortees and prostitutes for whose criminal participation with aborters or with pimps and panderers the Legislature has prescribed a lesser punishment, may not be subjected to greater punishment by the misuse of the conspiracy statute." (*Williams*, at pp. 14–15.)

In *People v. Mayers, supra,* 110 Cal.App.3d 809, the three-card monte case, the defendant argued that the specific provision of section 332 proscribing three-card monte prevailed over the general sanction against conspiracy to defraud contained in former subdivision 4 of section 182. (*Mayers*, at p. 812.) The appellate court agreed, stating: "It is a firmly established principle where specific conduct is prohibited by a special statute, a defendant cannot be prosecuted under a general statute. [Citations.] [¶] . . . [¶] The foregoing rule is necessary to prevent a general statute from swallowing up the exceptions contained in specific enactments." (*Id.* at pp. 813–814.) The court observed that section 332 made the defendant's offense a misdemeanor, whereas, if section 182 applied, "any section 332 misdemeanor violation would be automatically elevated to a felony . . . ." (*Mayers*, at p. 814.) The court found it "[n]oteworthy" that the Legislature had revised section 332 from a pure felony statute to one in which felony or misdemeanor status depended upon the value of the money or property fraudulently obtained (*Mayers*, at p. 814), and concluded that "[p]unishment as a conspiracy would void section 332's specifically sanctioned misdemeanor punishment of three-card monte where the value of defrauded property did not exceed" a specified amount. (*Mayers*, at p. 815.)

In *People v. Pangelina* (1981) 117 Cal.App.3d 414 [172 Cal.Rptr. 661], two prostitutes residing in a house of prostitution were charged with conspiracy to keep a house of prostitution, a felony, although the underlying substantive

offense (§ 315) was a misdemeanor. The court noted prior appellate decisions that recognized an affirmative legislative intent to punish prostitutes less severely than pimps or panderers, because, "rather than being accomplices or coconspirators of those charged with felony pimping or pandering, prostitutes are criminally exploited by such persons. [Citations.]" (*Pangelina*, at p. 422.) The court concluded that, in light of the legislative intent behind the statutory scheme, "the use of the conspiracy law to impose felony punishment upon persons merely residing in a house of prostitution . . . directly violates an affirmative legislative intent to punish those parties as misdemeanants. Such a conclusion is strengthened by a consideration of the policy behind the prohibition of criminal conspiracies [citation], which is not served where, as here, the presence of more than one prostitute in a house of prostitution does nothing to further the criminal objective of the prostitute, or make more likely the commission of other crimes. [Citation.] [¶] Permitting appellants to be convicted and punished as felons pursuant to section 182 would effectively elevate any misdemeanor violation of section 315 to a felony whenever more than one prostitute was found to 'willfully reside' in a house of prostitution—an increased punishment clearly repugnant to legislative intent. [Citation.]" (*Pangelina*, at p. 424.)

In *People v. Roberts, supra,* 139 Cal.App.3d 290, an incident within a prison resulted in the death of a prisoner and a correctional officer. Roberts, a life prisoner, and Menefield, an inmate serving less than a life term, were charged, inter alia, with conspiracy to commit murder and/or assault by a life prisoner with means of force likely to produce great bodily injury, in violation of section 4500. Arguing that the statute by its very terms applied only to life prisoners, Menefield successfully moved to strike the portion of the information charging him with conspiracy to violate section 4500. (*Roberts*, at pp. 291–292.) On the People's appeal, the court observed that section 4500 singled out a life prisoner for special treatment, whereas section 4501, while dealing with the same type of prohibited conduct, addressed someone who, like Menefield, was a state prisoner serving less than a life sentence.[9] (*Roberts*, at p. 293.) The appellate court concluded: "Since the Legislature has acted in such a fashion there appears to be an affirmative legislative interest to impose a lesser punishment on persons such as [Menefield]. To make use of the conspiracy charge to defeat this legislative intent is not permissible." (*Id.* at pp. 293–294.)

In *In re Meagan R.* (1996) 42 Cal.App.4th 17 [49 Cal.Rptr.2d 325], Meagan was found to have committed burglary on the theory that she entered a residence with the intent to aid and abet her own statutory rape. After

---

[9] Section 4500 applies to "[e]very person while undergoing a life sentence," while section 4501 begins: "Except as provided in Section 4500, every person confined in a state prison . . . ."

reviewing many of the cases we have discussed, the court concluded: "Within the context of being an aider or abettor, the foregoing authority establishes a rule that where the Legislature has dealt with crimes which necessarily involve the joint action of two or more persons, and where no punishment at all is provided for the conduct, or misconduct, of one of the participants, the party whose participation is not denounced by statute cannot be charged with criminal conduct on either a conspiracy or aiding and abetting theory. [Citation.] So, although generally a defendant may be liable to prosecution for conspiracy as an aider and abettor to commit a crime even though he or she is incapable of committing the crime itself, the rule does not apply where the statute defining the substantive offense discloses an affirmative legislative policy the conduct of one of the parties shall go unpunished. [Citation.] Moreover, when the Legislature has imposed criminal penalties to protect a specific class of individuals, 'it can hardly have meant that a member of that very class should be punishable either as an aider or abettor or as a co-conspirator.' [Citation.]" (*Id.* at pp. 24–25.) Accordingly, the court agreed with Meagan's contention that "her liability for aiding and abetting her own statutory rape is precluded as a matter of law and thus she could not harbor the necessary culpable state of mind required to be guilty of burglary." (*Id.* at p. 19.)

▮ None of the foregoing authorities persuade us that Lee cannot be liable for conspiring to violate section 4573.9. In each, the overriding consideration is the Legislature's intent—whether divined from statutory language or from application of principles, such as Wharton's Rule or the rule that a specific statute controls over a general one, which are, fundamentally, aids to discerning legislative intent (see *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593]; *People v. Mayers, supra,* 110 Cal.App.3d at pp. 813, 815)—that one party escape punishment, or be punished less severely, for participation in the conduct at issue. We discern no such intent here.

▮ Section 4573.9 is one of a series of statutes that are to be construed together and which demonstrate that the Legislature "chose to take a prophylactic approach to" "the ultimate evil [of] drug use by prisoners" "by attacking the very presence of drugs and drug paraphernalia in prisons and jails. [Citation.]" (*People v. Gutierrez* (1997) 52 Cal.App.4th 380, 386 [60 Cal.Rptr.2d 561]; cf. *People v. Buese* (1963) 220 Cal.App.2d 802, 807 [34 Cal.Rptr. 102].) The obvious purpose of these statutes is "to deter the presence of illicit drugs in custodial institutions"; the statutes are "deemed necessary to ensure orderly administration and security within such institutions. [Citations.]" (*People v. Superior Court (Ortiz)* (2004) 115 Cal.App.4th 995,

1002 [9 Cal.Rptr.3d 745] [holding that § 4573.6 covers state mental hospitals in which inmates are involuntarily confined under the custody of peace officers].)

In pertinent part, section 4573 makes it a felony, punishable by imprisonment for two, three, or four years, for "any person" to "knowingly bring[] or send[] into, or knowingly assist[] in bringing into, or sending into, any state prison," any controlled substance or related paraphernalia. Section 4573.5 makes it a felony, punishable by imprisonment for 16 months, or two or three years (see § 18), for "[a]ny person" to "knowingly bring[] into any state prison" drugs other than controlled substances or related paraphernalia. Section 4573.6 makes it a felony, punishable by imprisonment for two, three, or four years, for "[a]ny person" to "knowingly [have] in his or her possession in any state prison, . . . any controlled substances" or related paraphernalia. Section 4573.8 makes it a felony, punishable by imprisonment for 16 months, or two or three years (see § 18), for "[a]ny person" to "knowingly [have] in his or her possession in any state prison, . . . drugs in any manner, shape, form, dispenser, or container," or any paraphernalia for consuming drugs. "Notwithstanding any other provision of law," section 4573.9 makes it a felony, punishable by imprisonment for two, four, or six years, for "any person, other than a person held in custody," to furnish, etc., or offer to furnish, etc., any controlled substance to a prison inmate.

Section 4573.9 is the only one of the statutes that specifically attacks the deliberate use of a noninmate to smuggle drugs to an inmate. That the potential harm addressed by this statute reaches well beyond that of the other statutes, cannot be gainsaid. Although the drugs might be intended merely for the recipient inmate's personal use, the existence of what amounts to a smuggling operation makes it much more likely there will be further distribution within the prison. Moreover, according to information before the Legislature in support of the enactment of section 4573.9, the actions of noninmates (such as visitors, teachers, maintenance workers, and correctional officers) in bringing drugs into prisons "are violative of the public trust, and exacerbate problems in internal control." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 2863 (1989–1990 Reg. Sess.) as amended Aug. 28, 1990, p. 2.) The same bill also increased penalties under the other related statutes, thus clearly indicating how serious a problem the Legislature considered the presence of controlled substances in prisons, and especially the sale or furnishing of those substances to inmates.

It is apparent that, by seeking to deter illicit activities on the part of visitors and correctional personnel (see Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2863 (1989–1990 Reg. Sess.) as introduced, p. 2), the Legislature sought to reduce the flow of drugs into the prison system. Although the increased

penalty for the substantive offense of in-prison sale, etc., of controlled substances is restricted to noninmates, nothing in the legislative history of section 4573.9 or in the overall statutory scheme suggests the Legislature intended to exempt from this increased penalty those inmates who actively join with noninmates in a criminal conspiracy to introduce controlled substances into prison. To hold otherwise would lead to the absurd result of an incarcerated drug kingpin, using noninmate "mules" to smuggle into prison contraband that is then sold to other inmates in a profit-making business enterprise, and yet escaping the increased penalties to which the "mules," who operate at his or her direction, are subject.

In sum, we conclude that, while the Legislature reasonably could (and did) determine that, in order to deter the introduction of controlled substances into prisons, only noninmates should be subject to increased penalties for commission of the substantive offense proscribed by section 4573.9, the more lenient related statutes are not controlling with respect to a person in Lee's situation, and there is no affirmative legislative intent that such a participant go unpunished or be punished less severely. The situation shown by the evidence in the present case is precisely the type in which collaborative criminal activities pose a greater potential threat than the individual substantive offense; hence, there is no logical reason why the Legislature would want conspiracy to violate section 4573.9 and a violation of the statute itself to be merged for prosecution and punishment. (See *Iannelli v. United States, supra,* 420 U.S. at pp. 778–779, 784; *People v. Tatman, supra,* 20 Cal.App.4th at p. 8.) Since we do not find "from all of the circumstances that there was an *affirmative* legislative intent to create an exception to the general rule of liability of . . . conspirators" (*Hutchins v. Municipal Court* (1976) 61 Cal.App.3d 77, 84 [132 Cal.Rptr. 158]), it follows that Lee was properly charged with, and convicted of, conspiracy to violate section 4573.9.[10]

**II**[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[10] Lee says the impropriety of his prosecution and conviction are further demonstrated by the trial court's purportedly erroneous failure to instruct, as an element of the offense, that the person charged must be "any person, other than a person held in custody." We do not view this as a claim of instructional error, but simply a contention made for illustrative purposes. Were we to find the instruction somehow incomplete, we would conclude that any error was harmless beyond a reasonable doubt. (*People v. Hughes* (2002) 27 Cal.4th 287, 353 [116 Cal.Rptr.2d 401, 39 P.3d 432]; see *Neder v. United States* (1999) 527 U.S. 1, 7–20 [144 L.Ed.2d 35, 119 S.Ct. 1827].)

[*]See footnote, *ante,* page 522.

## DISPOSITION

The judgment is affirmed.

Vartabedian, J., and Cornell, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 17, 2006, S141998. Baxter, J., did not participate therein.